(No. 68286.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SANTIAGO SANDOVAL, Appellee.

*Opinion filed January 17, 1990. —Rehearing denied April 9, 1990.*

162

MILLER, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield, and Fred L. Foreman, State's Attorney, of Waukegan (Robert J. Ruiz, Solicitor General, Terence M. Madsen and Jack Donatelli, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Nancy Rink Carter, all of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert P. Will, Jr., of Will & Briscoe, of Waukegan, for appellee.

JUSTICE CLARK delivered the opinion of the court:

At issue in this case is the admissibility of certain evidence about the sexual history of the complainant under

the State's rape shield statute (Ill. Rev. Stat. 1987, ch. 38, par. 115—7). Santiago Sandoval, appellee, was found guilty on two counts of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) and one count of battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3) and not guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2)) and unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)) following a trial by jury in the Lake County circuit court. On appeal, the convictions were reversed and the cause was remanded for a new trial. (178 Ill. App. 3d 669.) This court granted the State's petition for leave to appeal pursuant to our Rule 315(a) (107 Ill. 2d R. 315(a)). Two questions are presented for review: (1) Is evidence of a victim's sexual relations with men other than defendant strictly precluded under the rape shield statute or may a victim waive the rule of evidence, thus allowing the evidence of prior sexual conduct? (2) Is evidence that a victim has not dated since the alleged attack properly excluded as collateral? For the reasons stated below, we reverse.

The incident which led to the indictment, euphemistically referred to as "date rape," occurred on January 1, 1987. Sandoval had a date on New Year's Eve with his 20-year-old former live-in girlfriend; following a separation begun when the complainant moved out of the apartment she shared with Sandoval, the two had begun seeing one another again and had plans to celebrate the new year together. Although Sandoval's and complainant's accounts of how the evening ended differed substantially, both indicate that repeated acts of anal intercourse followed by oral sex occurred. We will detail the events of the evening only as they are relevant for our analysis.

Sandoval testified that the events of New Year's Eve merely represented the same pattern which had occurred

throughout his prior tempestuous relationship with the complainant: a fight was followed by making love. Sandoval further testified that an argument began when, during their evening out, he learned from an acquaintance that the complainant allegedly had an affair with another man during their on-again/off-again separation. Although the evening seemed to be following the same old pattern of fighting followed by sex, he stopped the lovemaking (which he testified had been mutual and consensual to that point) because he could not continue, knowing that complainant had an affair during their separation. He ended the sexual encounter and told complainant to leave his house. Sandoval acknowledged that they had anal sex, a practice which, he testified, the two had engaged in on at least a dozen prior occasions and which was initiated by complainant on this occasion, followed by oral sex, which he also asserts was initiated by his partner. Sandoval argues that the present charges stem from the complainant's anger at being rejected after she had initiated sex between them; indeed, he testified at trial that as complainant left the apartment, she threatened him. Shortly thereafter, the police knocked at his door.

The complainant's testimony depicted a somewhat different conclusion to the evening. Complainant testified that Sandoval had become angry when he learned that she had been out with another man a week earlier. Rather than be left stranded at the bar in Wisconsin where they were when Sandoval learned about the evening out, complainant got into Sandoval's car as he was leaving. Sandoval then drove directly to his apartment. Leaving her coat in the car, the complainant followed Sandoval into the apartment where she attempted to talk with him about their relationship. She testified that he continued to get more upset and angry. She tried to leave, but Sandoval grabbed her arm; he told her, ac-

cording to her testimony, that he was going to have sex with her one last time. After a physical confrontation in the living room, Sandoval pushed complainant into the bedroom, where he hit her several times on the back of the head, told her he was going to make it hurt, and forced her into repeated acts of anal intercourse followed by oral sex. Complainant testified that she begged Sandoval not to engage in anal sex with her; although she testified that they had had anal sex on two prior occasions, she indicated that she had told Sandoval that she did not enjoy it and that it hurt. Finally, when complainant thought that she could escape without being caught, the complainant ran out of the apartment to an upstairs apartment where the resident allowed her to call the police. When she knocked on the neighbor's door she was wearing only undergarments and a skirt. She left behind her purse, her sweater, and some jewelry.

During the complainant's direct examination at trial, the following exchange occurred between the State's Attorney and the complainant:

"Q. Now, you had had anal sex with him before?

A. Yes.

Q. And on how many occasions had he had anal sex with you?

A. Twice.

Q. And do you recall at whose request that occurred?

A. [Sandoval's].

Q. Had you ever had anal sex in the past?

A. With others?

Q. Yes, with other people.

A. No."

No objection to this testimony was made by the defense counsel.

On cross-examination, the complainant again reiterated that she had not had anal intercourse with others. Defense counsel, in an attempt to impeach the complain-

ant, then asked "Okay. Now you know a fellow named—." The State's Attorney objected to the question, basing the objection on the preclusion of such testimony in the provisions of the rape shield statute. Although the trial court initially indicated that the defense could, in its case in chief, bring in testimony to impeach the complainant because the prosecution had "opened the door," the court later reversed that ruling. Having reviewed the rape shield statute, the court found that such testimony was excluded under the provisions of the statute. Out of the hearing of the jury, the court admonished both the defense counsel, for not objecting to the original question posed by the prosecution, and the prosecutor, for asking a question precluded by the statute. The court indicated to counsel, outside the presence of the jury, that the defense could not ignore the strictures of the rape shield statute by failing to object to inadmissible information and then attempt to premise its case on information precluded under the statute. Defense counsel, by offer of proof for the record and out of the hearing of the jury, indicated that a certain male individual would have testified that, when he dated the complainant, they had engaged in anal sex.

Following the court's denial of defense counsel's motion for mistrial and just prior to giving the jury instructions, the court, on defense counsel's motion, instructed the jury to disregard the complainant's testimony that she had not had anal sex with others. Rather than allow further inadmissible testimony to further taint the trial, the court struck the complainant's testimony.

The trial court also rejected defense counsel's attempts to impeach the complainant's testimony, elicited on cross-examination, that the incident with Sandoval had changed her relationship with men and that she had been unable to date since the occurrence. Defense counsel questioned complainant about her presence at a cer-

tain bar, just a few days before the trial, with another gentleman. When the complainant denied being on a date, defense counsel indicated to the court that he wished to impeach with a witness who would testify that he saw the complainant, just a few days before the trial, at a local bar "hanging all over a gentleman friend of hers." The trial court refused to admit this evidence.

Sandoval appealed his conviction, arguing that the court's refusal to allow him to challenge the complainant's testimony denied him his constitutional right to confront and cross-examine the witness against him. The appellate court did not reach the constitutional issue on the impeachment testimony about past sexual experiences, however. Rather, it looked to the language of the statute and concluded that the rape shield statute did not preclude a complainant from testifying about her own past sexual activities, or lack thereof, with third parties. In essence, the appellate court found that the complainant's own waiver of the statute's protection precluded assertion of that protection as a shield against the defendant. As to the complainant's testimony that she had not dated, without citation to authority, the appellate court also reversed. The court reasoned that since the case "came down to an evaluation by the jury of the credibility of complainant and defendant" (178 Ill. App. 3d at 677), the defendant's impeaching evidence was allowable as "relevant to the believability of [complainant's] accusations against defendant" (178 Ill. App. 3d at 678).

For the reasons stated below, we reverse the judgment of the appellate court.

Prior to enactment of the rape shield statute in 1978 (Ill. Rev. Stat. 1987, ch. 35, par. 115—7), to a certain extent a victim's sexual history was admissible at trial when the affirmative defense of consent was alleged by the defendant. However, any testimony offered was

strictly limited by the courts to the victim's general reputation for immorality and unchastity (*People v. Collins* (1962), 25 Ill. 2d 605, 611; see also *People v. Ellison* (1984), 123 Ill. App. 3d 615, 624); specific acts of immorality or promiscuity were not admissible (*Collins*, 25 Ill. 2d at 611; *Ellison*, 123 Ill. App. 3d at 624). This court noted in *Collins* that, since lack of consent was an element of the complaint, "it is permissible, in order to show the probability of consent by the prosecutrix, that her general reputation for immorality and unchastity be shown. The underlying thought here is that it is more probable that an unchaste woman would assent to such an act than a virtuous woman ***." (*Collins*, 25 Ill. 2d at 611.) It has been averred that the premise of this rationale was based on the presumption that "[t]ruthfulness and chastity in women were thought to be virtues that were found only together. No 'unchaste' woman was expected to be truthful." (Murphy, *Rape Shield Statute Upheld by Illinois Appellate Court*, 69 Ill. B.J. 110 (1980) (hereinafter cited as Murphy, *Rape Shield Statute*).) Support for acknowledgment of the prevalence of such a presumption is found in clear judicial statements: " 'It is a matter of common knowledge that the bad character of a man for chastity does not even in the remotest degree affect his character for truth, when based upon that alone, while it does that of a woman.' " Murphy, *Rape Shield Statute*, at 110, quoting *State v. Sibley* (1895), 131 Mo. 519, 531-32, 33 S.W. 167, 171.

The rape shield statute departs dramatically from the courts' prior position. Effective January 4, 1978, the rape shield statute provides:

> "a. In prosecutions for [rape or deviate] sexual assault ***, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused.

b. No evidence admissible under this Section shall be introduced unless ruled admissible by the trial judge after an offer of proof has been made at a hearing to be held in camera in order to determine whether the defense has evidence to impeach the witness in the event that prior sexual activity with the defendant is denied. Such offer of proof shall include reasonably specific information as to the date, time and place of the past sexual conduct between the alleged victim and the defendant. Unless the court finds that reasonably specific information as to date, time or place, or some combination thereof, has been offered as to prior sexual activity with the defendant, counsel for the defendant shall be ordered to refrain from inquiring into prior sexual activity between the alleged victim and the defendant." Ill. Rev. Stat. 1987, ch. 38, par. 115—7.

The constitutionality of the rape shield statute has been addressed on several occasions by the appellate court (see *People v. Buford* (1982), 110 Ill. App. 3d 46; *People v. Bachman* (1981), 92 Ill. App. 3d 419; *People v. Cornes* (1980), 80 Ill. App. 3d 166), though it has not been addressed by this court. We note that in the case before us, the appellate court did not address the constitutionality of the statute; rather, it reached its decision based on statutory construction. (178 Ill. App. 3d at 677.) Noting that a court of review will not decide constitutional questions when the matter can be disposed of on other grounds (178 Ill. App. 3d at 677, citing *People v. Fleming* (1971), 50 Ill. 2d 141, 144), the appellate court looked to the "factors which prompted the rule" and determined that the rule "does not preclude an exception for admission of the impeaching evidence offered by defendant in this case." (178 Ill. App. 3d at 674.) Having determined that the proffered evidence was relevant because the case rested on the complainant's credibility, the court concluded:

"Where the evidence is relevant and is introduced, not to harass the witness but only in a defensive response to the alleged victim's own initiative, the statute does not preclude an exception to the general protective umbrella it places over victims of sexual assault. Once a complainant decides to address her own past sexual conduct, or lack of it, she relinquishes the statutory protection and risks a challenge to the truthfulness of her version of that conduct." 178 Ill. App. 3d at 676.

We do not find the appellate court's construction of the statute persuasive. The language of the statute, quoted in its entirety above, is concise and precise. Resort to legislative history—the factors which prompted the rule—is necessary only when the statute is vague or ambiguous and clarification of the underlying intent is needed to assist interpretation of the language. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141.) The rape shield statute is neither vague nor ambiguous. We note that the statute does not limit its proscription to a defendant's attempts to introduce evidence of the victim's prior sexual encounters; the statute says quite simply that "the prior sexual activity *** is inadmissible." (Ill. Rev. Stat. 1987, ch. 38, par. 115—7(a).) The words of limitation which follow do not indicate that only the defendant is prohibited from introducing such evidence; the *exception* addresses only the "past sexual conduct of the alleged victim with the accused." Ill. Rev. Stat. 1987, ch. 38, par. 115—7(a).

The clear and unambiguous language of the statute has been noted by the appellate court in several cases. The court in *People v. Cornes* (1980), 80 Ill. App. 3d 166, 175, noted:

"A reading of the *** statute reveals that the legislature clearly and unequivocally abrogated the old Illinois rule permitting reputation evidence of the complainant's chastity and immorality as it pertained to the issue of consent. [Citation.] The express language of the rape shield

law precludes the admission of evidence of prior sexual activity and reputation of the complainant except when it concerns the past sexual conduct of complainant with the defendant."

*Cornes* involved a defendant who was precluded from putting on testimony about the complainant's abortion and about her reputation for chastity, information which the defendant asserted was necessary to show the closeness of his relationship with the complainant. The court noted that under *either* the old Illinois common law or the current statute, the defendant could not put into evidence specific acts of the complainant or her general moral reputation. *Cornes*, 80 Ill. App. 3d at 173-75.

A similar result was reached in *People v. Ellison* (1984), 123 Ill. App. 3d 615. In construing the language of the statute, the court noted that "it is clear the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the prior sexual conduct of the alleged victim with the accused." *Ellison*, 123 Ill. App. 3d at 623.

We find the statutory analysis of the appellate court in *Cornes* and *Ellison* persuasive. The language of the statute is clear and unambiguous; it leaves no room for introduction of reputation or specific-act evidence from any party in the action.

We note that even were we to find that the language of the statute is vague or ambiguous, a review of the legislative history supports a construction which prohibits *anyone* from introducing evidence of the victim's sexual history unless it relates to the relationship between the victim and the accused.

The first draft of House Bill 760 allowed admission of evidence relating to the victim's general reputation for chastity. The Governor amendatorily vetoed the act, stating in a letter to the House of Representatives that "neither the victim's prior sexual activity nor her reputation

*should ever be inquired into* in a rape case unless she was previously involved with the alleged rapist." (Emphasis added.) (Letter from Governor James Thompson to the Illinois House of Representatives (Oct. 24, 1977), reprinted in J. Ill. H.R., No. 4, 80th Ill. Gen. Assem. 6404 (1977), as quoted in Comment, *The Illinois Rape Shield Statute: Privacy At Any Cost?*, 15 J. Marshall L. Rev. 157, 164 (1982).) The present form of the statute, incorporating the Governor's amendments, was adopted by the House overwhelmingly. (See 80th Ill. Gen. Assem., House Proceedings, November 3, 1977, at 59 (motion to concur in amendatory veto on House Bill 760).) The Senate concurred. (See 80th Ill. Gen. Assem., Senate Proceedings, November 22, 1977, at 10 (motion to accept the specific recommendations of the Governor as to House Bill 760); see also *People v. Ellison* (1984), 123 Ill. App. 3d 615, 623-24 (discussing the legislative history of House Bill 760); Comment, *The Illinois Rape Shield Statute*, 15 J. Marshall L. Rev. at 162-64 (same).) The statute in its present form precludes admission of evidence of the sexual history of the victim unless it relates to sexual conduct with the defendant.

Having found that the statutory language clearly precludes the admission of prior sexual acts of the victim, we turn now to consider defendant's constitutional attack on the statute. Sandoval asserts that the rape shield statute unconstitutionally denied him the right to confront the witness against him when the trial court excluded the testimony of a proffered witness. This witness would have testified that he had at one time dated the complainant and that they had engaged in anal sex which at times was initiated by the complainant. The testimony was essential, Sandoval argues, to rebut the complainant's testimony on direct examination that she had not had anal sex with others prior to her involvement with Sandoval. Sandoval further asserts that admission

of the proffered impeachment testimony is controlled by *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.

The Illinois Constitution provides: "In criminal prosecutions, the accused shall have the right \*\*\* to meet the witnesses face to face \*\*\*." (Ill. Const. 1970, art. I, §8.) The United States Constitution, with provisions applicable to the States under the fourteenth amendment, similarly provides: "In all criminal prosecutions, the accused shall enjoy the right \*\*\* to be confronted with the witnesses against him." U.S. Const., amend. VI.

It is well accepted that "a primary interest secured by [the confrontation clause] is the right of cross-examination." (*Douglas v. Alabama* (1965), 380 U.S. 415, 418, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074, 1076.) The extent or scope of this primary interest, the right of cross-examination, was reviewed by the Supreme Court in *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. At issue in *Davis* was the right of the defendant to question an adverse witness about his juvenile adjudication for burglary resulting in a probation. The defendant theorized that because the witness was on probation when the stolen property was found near his home, he would have been prone to make a quick (and perhaps erroneous) identification of suspects seen near his home in order to assure that police attention would not center on himself. The trial court granted the prosecutor's motion for a protective order, however, under an Alaska statute which precluded the defendant from asking about the witness' juvenile record. The order further prevented the defendant from rebutting the witness' assertion during cross-examination that he had never been questioned by law enforcement officers before, clearly an untruthful statement in light of his prior record. The Supreme Court, in holding that the defendant had been de-

nied his right under the confrontation clause to cross-examine, noted:

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Citation.] We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. [Citation.]" 415 U.S. at 316, 39 L. Ed. 2d at 353-54, 94 S. Ct. at 1110.

We have quoted from *Davis* at some length to highlight the types of situations in which the Supreme Court has indicated that the right of confrontation through cross-examination guaranteed under the constitutions supersedes a statutory right granted a witness or a policy of the State. With the *Davis* decision, the Court does not present the defense with a blanket invitation to attack a witness. Rather, *Davis* limits such an attack to

situations where the confrontation is both relevant and based on a showing of bias, prejudice or motive. Thus, *Davis* stands for the proposition that not even a statute can be used to shelter a witness whose motive, prejudice or bias may affect testimony before the court. The emphasis of *Davis* was not to *create* an exception to the statutory protection, but to *prevent* the statute from creating an exception to the well-settled and accepted admissibility of the motive, bias or prejudice of a particular witness.

The Court in *Davis* evaluated the constitutional right of the defendant based on a defendant's opportunity to present the theory of his case. The defendant merely attempted to show, in *Davis*, the possible motive or bias of the witness who might have reason to offset suspicion from himself, because of his own past record, by hastily identifying suspects. Had this theory been before the trial court, the resulting verdict may have been different. (415 U.S. at 319, 39 L. Ed. 2d at 355, 94 S. Ct. at 1111-12.) The Supreme Court protected the defendant's right to fully explore a theory of defense before the jury or the court which would be making the decision. 415 U.S. at 318, 39 L. Ed. at 354-55, 94 S. Ct. at 1111.

Sandoval's reliance on *Davis* is misplaced. The case before this court, although also analyzing a statute which ultimately served to prevent certain information about an individual from being considered by the jury, presents a quite different scenario. Sandoval's theory at trial was that the woman scorned (complainant) was out to even the score. The jury heard Sandoval's testimony wherein he indicated that the complainant initiated the sexual encounter, that after a time of having sex the defendant decided that the relationship would not work, that he then told complainant to leave, and that this charge of rape is a retaliation for rejection. We fail to see, and Sandoval has not explained, what impact complainant's

prior sexual encounters with a third party would have on this theory. Properly rejected is the old theory that a woman's sexual morality bears a direct relationship to her truthfulness; therefore, no correlation can be made as was made in *Davis* between a witness' prior record and the witness' credibility (the general attack on the witness' credibility). Nor do we perceive how the proffered testimony would reveal the witness' bias, prejudice or motive to testify falsely in charging the defendant (particular attack on the witness' credibility). Even were the proffered testimony true, the fact that complainant had engaged in anal sex in a prior relationship has no bearing on the present sexual assault charge merely because the information is also about a sexual practice.

The activities under scrutiny by a trial court in a case alleging sexual assault must relate to the exchange between the complainant and the person accused, that is, whether the sexual attentions were forced upon another without consent. (See Ill. Rev. Stat. 1987, ch. 38, par. 12—13.) Here it appears from our review of the record that the accused is attempting to do precisely what the rape shield statute was enacted to prevent: to divert the jury's attention from the accusation against him (forcing the complainant to perform sexual acts, acts which defense counsel stressed might offend the sensibilities of some) by offering testimony that would indicate that this complainant had not only initiated similar sexual acts in the past with the defendant, but had also initiated such acts with others.

Sandoval's rationale, moreover, places undue emphasis on the particular type of sexual act or method of the act rather than on the force and dominance of one over another with the use of sex. An emphasis that complainant had engaged in anal sex with others would only serve to accentuate the particular type of sexual contact rather than the use of force to accomplish contact. To

emphasize a particular type of sexual contact is to emphasize form over substance, triggering the "sensibilities" of the jurors rather than encouraging a fact-based decisional process.

This case does not present a situation in which the jury was presented with what the defendant alleges is a completely unbelievable portrait of the complainant which is only rebuttable with introduction of the proffered testimony. We note that the fact that complainant was sexually experienced would have been evident to the jury, for it was clear from the testimony that she was a 20-year-old mother of a two-year-old child. Additionally, both complainant and defendant testified that they had lived together for several months in a sexual relationship and that they had engaged in anal sex on a number of occasions. That the number of times differed was a matter that went to credibility. We find that any concern over a number is entirely misplaced, for complainant's possible acquiescence became a question for the jury when complainant testified that she had engaged in anal sex with defendant on more than one prior occasion. Moreover, we note that it is not the role of this court to judge "specific actions" (*i.e.*, anal sex or oral sex) based on whether those particular acts, in and of themselves, offend our sensibilities; rather, we must determine whether the basic elements of the offense charged have been proven (here, the elements are whether sexual penetration was accomplished through use of force or threat of force). Information about the complainant's prior sexual practices does not have any bearing on the charge levied against Sandoval by the complainant.

The appellate court has long recognized that under the rape shield statute the complainant's prior sexual activities are *irrelevant* to a sexual assault charge unless those activities involved the complainant and the accused. Indeed, the rape shield statute has survived con-

stitutional review in the appellate court against attack similar to that now under consideration. The court in *People v. Cornes* noted:

"Defendant's right of confrontation necessarily includes the right to cross-examine witnesses, but that right does not extend to matters which are irrelevant and have little or no probative value. Complainant's past sexual conduct has no bearing on whether she has consented to sexual relations with defendant. The legislature recognized this fact and chose to exclude evidence of complainant's reputation for chastity as well as specific acts of sexual conduct with third persons in cases of rape and sexual deviate assault. *** The legislature was acting well within its powers in enacting reasonable legislation intended to eliminate the cruel and abusive treatment of the victim at trial by precluding the admission of prejudicial and irrelevant material and to promote the lawful administration of the criminal justice system." 80 Ill. App. 3d at 175-76.

In *People v. Buford* (1982), 110 Ill. App. 3d 46, the court specifically addressed the defendant's right of confrontation in light of *Davis v. Alaska* and rejected the defendant's allegation that he was not allowed to confront the witness.

The trial court's application of the rape shield statute in *Buford* prevented the defendant from showing that the complainant had previously been convicted of solicitation for prostitution in 1972. (110 Ill. App. 3d at 50.) Defendant contended that because the complainant was currently on Federal probation for a 1978 mail fraud charge, she had a motive to fabricate her testimony in order to prevent an inference that she was working as a prostitute, thereby protecting her probation. (110 Ill. App. 3d at 50.) The defendant testified that he had known the complainant since 1972 when he met her in an area of Chicago frequented by prostitutes. Since that time he had paid her weekly to have sex. Complainant

testified on both direct and cross-examination that she did not know the defendant and had never seen him before the night of the attack. (110 Ill. App. 3d at 49, 52.) This testimony was refuted by defense witnesses during the defendant's case in chief. On cross-examination complainant denied that she frequented an area where prostitutes were known to congregate. (110 Ill. App. 3d at 52.) The defendant argued that acknowledgment or testimony indicating that the complainant had been convicted of solicitation in 1972 would affect her probation; therefore she had to fabricate the charge of sexual assault. The court noted that the 1972 conviction had no present relevance to the 1978 probation and that, additionally, defense counsel had opportunity to cross-examine the complainant and to present the defendant's testimony about the relationship between the parties before it concluded:

"In *Davis*, the [C]ourt noted that the defense was confronted with a situation in which the jury simply could not be made aware of the defendant's theory of the case. In the instant case, the defense presented its theory of the case at length. *** 'Complainant's past sexual conduct has no bearing on whether she has consented to sexual relations with defendant.' [Citation.]" 110 Ill. App. 3d at 52.

The appellate court again reviewed the statute under a constitutional attack which asserted that the rape shield statute "abrogat[ed] *** [defendant's] sixth amendment right to present a full and fair defense" in *People v. Ellison* (1984), 123 Ill. App. 3d 615, 622. The defendant in *Ellison* based one of his arguments on appeal on the trial court's preclusion of evidence concerning the victim's "sexual experience or reputation for sexual activity." (123 Ill. App. 3d at 625.) The appellate court rejected defendant's argument that *Davis v. Alaska* was dispositive, relying on the Supreme Court's

citation in *Davis* to *Chambers v. Mississippi* (1973), 410
U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, and noted
that the Court "held that the constitution requires that
the competing interests of the defendant's right of con-
frontation and the State's public policy for enacting the
rule be closely examined and a balance struck." (*Ellison*,
123 Ill. App. 3d at 626.) The *Ellison* court further noted
that:

> "The State policy underlying the rape shield statute
> *** is to prevent the defendant from harassing and hu-
> miliating the prosecutrix at trial with evidence of either
> her reputation for chastity or specific acts of sexual con-
> duct with persons other than the defendant, since such
> evidence has no bearing on whether she consented to sex-
> ual relations with the defendant. Further, exclusion of
> such evidence keeps the jury's attention focused only on
> issues relevant to the controversy at hand. Last, but not
> necessarily least, the exclusion promotes effective law en-
> forcement because victims can report crimes of rape and
> deviate sexual assault without fear of having the intimate
> details of their past sexual activity brought before the
> public." (123 Ill. App. 3d at 626.)

Although the defendant argued that the proffered testi-
mony was crucial to his defense because "the case ***
'boiled down to the word of the prosecutrix against
[his]' " (123 Ill. App. 3d at 626-27), the court concluded
that the defendant's need for the excluded evidence was
not clearly shown.

Sandoval argues that this case, like *Ellison*, boils
down to the jury's determination of the credibility of the
parties and he was denied the opportunity to confront
the witness with what he alleges was a lie. He also ar-
gues that, unlike *Ellison*, this case centers on complain-
ant's testimony on direct examination, rather than on
testimony elicited under cross-examination.

We note, however, that the testimony which Sandoval
wished to introduce, as was also the case in *Ellison*, was

not relevant to the matter being tried. The testimony would have added no information which could have helped the jury decide whether or not the complainant had been forced to have sex with the defendant *on this occasion.* Sandoval was not prevented from presenting his theory of the case. Indeed, he testified that fighting and making love was a pattern that he and complainant repeated often; he testified that anal sex was often initiated by the complainant and that they had engaged in this type of sex on at least a dozen occasions; he testified, and it was corroborated by testimony from defendant's brother, that the complainant had physically hit the defendant on a prior occasion when she was angry and then falsely accused the defendant of striking her; Sandoval also testified that complainant threatened him when she left the apartment. See *Buford,* 110 Ill. App. 3d at 52 (where the court held that limitation on cross-examination did not infringe defendant's right of confrontation where the defendant had opportunity to present his theory of the case).

Even if this court were to assume that the complainant was not truthful when she testified that she had not had anal sex with others, we would not be required to reverse the verdict of the jury based on a denial of defendant's right of confrontation. Impeachment of a witness is restricted to relevant matters; a witness may not be impeached on collateral or irrelevant matters. *People v. Collins* (1985), 106 Ill. 2d 237, 269; *People v. Columbo* (1983), 118 Ill. App. 3d 882, 966.

*People v. Columbo* is helpful in analyzing this situation. In *Columbo,* a murder trial, a prosecution witness was called who had been involved in a sexual relationship with the co-defendant, Frank DeLuca. During this relationship, DeLuca had taken photographs of the witness performing "unnatural sexual acts with other men, a woman and a dog." (118 Ill. App. 3d at 963.) When the

relationship ended, DeLuca told the witness that he had burned the pictures; the pictures were not burned, however, and ended up in the possession of defense counsel prior to the trial. Following the State's motion *in limine* to preclude the defendant from cross-examining the witness about these pornographic photographs, the court carefully delineated the scope of any questions regarding the photographs. At trial, the witness specifically denied ever participating in certain sexual acts with a woman and with a dog—statements which defendant could prove were lies by showing particular photographs or by further cross-examining the witness. The trial court denied defendant's efforts to impeach the witness. The appellate court upheld the trial court, noting that the particular sexual acts were unrelated to the material issue of homicide and that a witness may not be impeached on a collateral matter. (118 Ill. App. 3d at 966-67.) The court further noted that the defendant had ample opportunity to show that the witness' decision to testify may have been based on efforts at retaliation for not returning the photographs, that is, the witness may have been biased. 118 Ill. App. 3d at 967.

Both the legislature and the courts have found that a complainant's prior sexual history is irrelevant in a trial for sexual assault. Since prior sexual history is irrelevant, as in *Columbo*, the witness may not be impeached on irrelevant or collateral matters. See also *People v. Schott* (1976), 39 Ill. App. 3d 266, 272-73 (where the court upheld the trial court's denial of defendants' efforts to impeach a witness by offering the testimony of another person to show that a State witness' testimony on direct examination was false when he testified that he had gone to a particular farm to buy a gun (and not drugs as defendants alleged); defendants were on trial for robbery of a victim they claimed to have gone to see in order to buy drugs and they asserted that it was nec-

essary to impeach the witness to verify that the victim did indeed sell drugs).

Sandoval further argues that impeachment testimony was necessary because the complainant's statement that she had not engaged in this particular type of sex before would have given greater weight to her statement that she did not consent to the sexual encounter, that in fact she begged Sandoval not to do it because that kind of sexual encounter hurt. Complainant's assertion could have been rebutted by testimony that she had engaged in this particular type of sex on numerous occasions with another. Whether the complainant had participated in this particular sexual practice 2 times or 20 times has no bearing, however, on whether a particular instance of sex was consented to or was painful. (See Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(1).) Nor, we note, is it an element of the statute that the assault be painful. Mere absence of pain during or even enjoyment of particular sexual practices with certain individuals does not equate to absence of pain or enjoyment of the particular practice in all circumstances; nor, we note, does it have any bearing on the issue of consent. An act performed with gentleness on one occasion may be quite different than that same act performed with anger, hostility, or vehemence. Thus, even had complainant initiated anal intercourse with others in the past, we fail to see its relevance to the charges levied against Sandoval.

The supreme court of Michigan was faced with the task of determining the constitutional application of its rape shield statute in *People v. Hackett* (1984), 421 Mich. 338, 365 N.W.2d 120. *Hackett* is a consolidated case presenting two distinct factual backgrounds. In each instance, the court held that introduction of evidence about the sexual history of the complainant was inadmissible.

The first of the consolidated cases involved a defendant who "sought to introduce specific instances of the complainant's prior homosexual conduct with prisoners of the same race as defendant to circumvent the inference that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner." (421 Mich. at 351, 365 N.W.2d at 126.) In upholding the trial court's exclusion of the proffered testimony, the court noted:

> "Like prostitution, the fact that a person is a homosexual, standing alone, has little or no logical relevance between the excluded prior sexual acts evidence and the issues of consent or credibility. Thus, to the extent defendant sought to introduce evidence as to complainant's reputation as a homosexual or to specific acts of homosexuality for the purpose of bolstering his defense of consent, we find such evidence is irrelevant." (421 Mich. at 353, 365 N.W.2d at 126-27.)

The court indicated that "there is no logical nexus between a complainant's reputation for unchastity, whether it involves heterosexual or homosexual activity, and the character trait for truthfulness or untruthfulness." 421 Mich. at 352, 365 N.W.2d at 126.

In the second of the consolidated cases the defendant sought to introduce evidence of the complainant's reputation for unchastity, a specific instance of prior sexual conduct, and a statement made by the complainant about her unhappy marital situation. The court noted that the right to confrontation "requires only that the defendant be permitted to introduce relevant and admissible evidence." (421 Mich. at 354, 365 N.W.2d at 127.) Neither reputation evidence nor evidence of a specific instance of conduct with a third party has any relevance to the issue of complainant's consent with the defendant. Although the court recognized that certain "extraordinary circumstances" (421 Mich. at 355, 365 N.W.2d at 128) could

make such information relevant, it concluded that the case before it did not present such a situation.

The Michigan Supreme Court described those "extraordinary circumstances," those instances in which it indicated that information about the prior sexual history of a complainant could be relevant and necessary to preserve a defendant's constitutional right to confrontation. The court noted:

> "For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. [Citations.] Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. [Citations.] Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past." (421 Mich. at 348, 365 N.W.2d at 124-25.)

In a footnote, the court also noted the "extraordinary circumstances" accepted by a Federal court as examples of circumstances which would enhance the probative value of the proffered evidence:

> " 'evidence [which] is explanative of a physical fact which is in evidence at trial, such as the presence of semen, pregnancy, or a victim's physical condition indicating intercourse, or where the evidence tends to establish bias, prejudice, or ulterior motive surrounding the charge of rape. Sexual history might also be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue.' " 421 Mich. at 355 n.4, 365 N.W.2d at 128 n.4, quoting *United States v. Kasto* (8th Cir. 1978), 584 F.2d 268, 271 n.2.

The Federal case cited by the Michigan court is similar to another Federal case which Sandoval argues is dispositive of the issue before this court. In *United States ex rel. Fuller v. Attorney General* (N.D. Ill. 1984), 589 F.

Supp. 206, *aff'd mem.* (7th Cir. 1985), 762 F.2d 1016, the court noted the same "circumstances" quoted above which list times when more extensive cross-examination may occur or testimony be introduced. Sandoval emphasizes before this court the exception which would admit evidence where the victim has engaged in a "prior pattern of behavior," presumably, though not specifically articulated, on the assumption that a pattern of engaging in anal sex fits the exception. We are not prepared to conclude that testimony from another man that the complainant and he had engaged in anal sex fits the "prior pattern" exception, for to do so would require us to determine that the particular practice was so unusual, so outside the norm, that it had distinctive characteristics which make it the complainant's *modus operandi*. Even scholars and practitioners who advocate a change in the rape shield statutes discuss and describe this exception for "pattern of behavior" as similar to cases where pattern evidence is admitted because it shows the individual's unique "signature." (See generally Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 830-48 (1986); Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U. Pa. L. Rev. 544, 586-89 (1980).) The mere fact that the complainant had engaged in anal sex with another partner at some time in the past is not such a distinctive act as to make it probative or relevant to the charges against Sandoval.

Cases from other States which have allowed proffered testimony that at first blush appears to bring a complainant's sexual history to the fore are not dispositive of the situation before us. The cases are but manifestations of the exceptions already noted by the cases discussed above. The cases allowed testimony to show the possibility that another had caused a pregnancy (*Shockley v. State* (Tenn. 1978), 585 S.W.2d 645); to show

the complainant's possible motive to falsely accuse the defendant (*State v. Jalo* (1976), 27 Or. App. 845, 557 P.2d 1359; see also *Olden v. Kentucky* (1988), 488 U.S. ___, 102 L. Ed. 2d 513, 109 S. Ct. 480 (State's rape shield law did not bar testimony that complainant and third party were living together when that testimony was relevant to the accused's theory (complainant's motive to lie) of the case that complainant consented to the sexual encounter with the accused, but alleged rape rather than jeopardize her relationship with the third party who saw her get out of the accused's car and who happened to also be a State's witness in the case against accused)); to show that the complainant had filed false charges of rape in the past (*Smith v. State* (1989), 259 Ga. 135, 377 S.E.2d 158; *Stewart v. State* (Ind. 1988), 531 N.E.2d 1146); and to show the sexual activities of the complainant prior to the alleged rape where such activities might explain physical injuries (*State v. La-Clair* (1981), 121 N.H. 743, 433 A.2d 1326).

Though not cited by Sandoval, our review uncovered one case which does not fit neatly into the noted exceptions. *State v. Williams* (1986), 21 Ohio St. 3d 33, 487 N.E.2d 560, however, is not dispositive of the situation now before this court. *Williams* involved the court's review of a complainant's testimony on direct examination that she did not consent to sex with the defendant. The defendant testified at a pretrial hearing that he had numerous prior sexual encounters with the complainant, that she was a prostitute and he was her pimp. At trial the complainant testified that she did not consent to sex with defendant because she *never* consented to sex with men since she is a lesbian. The trial court denied defense attempts to have a witness testify as to his prior sexual relations with the victim and to admit testimony as to the victim's reputation as a prostitute. The Ohio Supreme Court noted that, since a key factor in the case

was *consent*, although the victim's credibility would be impeached with admission of testimony relating the accused's relationship with her or her reputation as a prostitute, the "proffered evidence has a more important purpose, which is to negate the implied establishment.of an element of the crime charged. For this reason, the probative value of the testimony outweighs any interest the state has in exclusion." (21 Ohio St. 3d at 36, 487 N.E.2d at 563.) The court found that the rape shield law as applied violated the defendant's right of confrontation.

At the core of the *Williams* case was the issue of consent based on complainant's claim that she *never* consented to sex with men. This claim, if believed by the jury, would bolster complainant's assertion that she therefore did not consent with defendant on this occasion. In the case before us, Sandoval and the complainant acknowledged that they had engaged in sex on prior occasions. Moreover, both acknowledged that they had engaged in anal sex on prior occasions, although their testimony indicated differing attitudes about the practice. Unlike *Williams*, the issue in this case was whether there was consent to engage in sex on this given occasion with Sandoval, not whether there was consent to engage in a particular variation of sexual contact. Complainant did not deny engaging in anal sex with the defendant on prior occasions, nor did she deny having a sexual relationship with the defendant. Whatever particular sexual practices she engaged in with other men, such testimony would not impact testimony about her actions with the defendant. *Williams* is therefore not helpful to Sandoval's case.

Nor do we find reliance on United States Supreme Court decisions dispositive in this case. In *Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354, the Court addressed the application and scope

of the doctrine of *Weeks v. United States* (1914), 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341. *Weeks* precluded the prosecution from utilizing evidence procured in violation of the fourth amendment to secure a conviction. (*Walder*, 347 U.S. at 64-65, 98 L. Ed. at 507, 74 S. Ct. at 356.) *Walder* involved a defendant's appeal from a conviction for transactions in narcotics in 1952. The defendant had also been indicted for similar offenses in 1950; the 1950 case was dismissed when the court ruled that the evidence—a heroin capsule—was inadmissible because of an unlawful search and seizure. At trial on the 1952 indictment, the defendant testified that he had never purchased, sold or possessed illegal narcotics. The prosecution then questioned him about the heroin capsule taken from his home in 1950; the defendant denied that any narcotics were taken from him at that time. In upholding the trial court's admission of extrinsic evidence to impeach the defendant's contention, the Court noted:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." (347 U.S. at 65, 98 L. Ed. at 507, 74 S. Ct. at 356.)

The Court reasoned that "of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics" before noting that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65, 98 L. Ed. at 507, 74 S. Ct. at 356.

Use of the prior inadmissible evidence in *Walder* was specifically limited by the trial court as being "solely for the purpose of impeaching the defendant's credibility." (347 U.S. at 64, 98 L. Ed. at 506, 74 S. Ct. at 355.) In the case before us, however, the defendant had ample opportunity to challenge the credibility of the complainant without resort to additional extrinsic evidence, evidence which courts and the legislature have labelled highly prejudicial. Sandoval and others testified as to the relationship that Sandoval had with the complainant; testimony was offered by Sandoval's brother which supported the allegation that the complainant had at times been the aggressor in their relationship and had falsely accused Sandoval in the past of abusive treatment; testimony further alleged that Sandoval and complainant had often engaged in anal sex. Unlike the situation in *Walder*, in which the only means the prosecution had to challenge the credibility of the defendant was by the use of the prior evidence, the credibility of the complainant in the case before us was clearly before the jury for review. No further attack merely on an issue of credibility was necessary.

*Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, relied on by Sandoval, is similarly inapposite. *Harris* involved use of a prior statement made by the defendant, inadmissible in the prosecution's case in chief under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, to impeach the credibility of the defendant when he denied on the witness stand making a sale of heroin to an undercover policeman. The Court noted that it "does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards." (*Harris*, 401 U.S. at 224, 28 L. Ed. 2d at 4, 91 S. Ct. at 645.) The proviso

noted by the Court was elaborated upon in its concluding statements: "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (401 U.S. at 226, 28 L. Ed. 2d at 5, 91 S. Ct. at 646.) Impeachment was based on utilization of a prior inconsistent statement by a defendant who was privileged to testify in his own defense, though he was not required to do so. Thus, the waiver of the general principle of exclusion of statements taken in violation of *Miranda* was not based on any deficiency or constitutional problem with *Miranda*, but because the defendant chose to take the stand and make statements inconsistent with prior statements on matters that were relevant and probative.

In the case before us, even if we were to assume that the complainant lied when she denied having anal sex with others, we fail to see how *Harris* applies; though not specifically relevant to the charges, it was clear that complainant had sex with others in the past, that the complainant had made no prior statements about her sexual history with parties other than the defendant, nor was the information relevant or probative of any fact in issue other than to attack the complainant's credibility.

In summary, although various Supreme Court cases have limited application of rules or statutes which preclude use of certain evidence, in each case the Court was recognizing the preeminence of longstanding rules of evidence: in *Davis*, that bias, motive or prejudice could be shown; in *Walder*, that defendant's prior "crimes" could be used to impeach when he chose to testify; in *Harris*, that prior inconsistent statements are admissible to impeach.

Although we certainly recognize that there may be certain situations in which the preclusion of the rape shield statute may not apply because of the defendant's

greater constitutional right to confrontation, we need not specifically adopt the rationale of our sister State courts since we conclude that we are not here confronted with an applicable situation demanding emphasis of the right of confrontation over the preclusion of the rape shield statute.

The trial court did not err in excluding the proffered testimony of someone who would testify that he had anal sex with the complainant. The complainant's original statement that she had not had anal sex with others was clearly inadmissible under the rape shield statute, as already noted. Such error would not have been cured, however, by further compounding the problem with admission of more evidence precluded by the statute. We are not required to remand this case for a new trial, however, because, the trial judge, prior to submission of the case to the jury, properly instructed the jury to disregard the complainant's statement that she had not had anal sex with others before her relationship with Sandoval.

As the State has noted, judicial admonishments to juries are routine; indeed, it is "the almost invariable assumption of the law that jurors follow their instructions." (*Richardson v. Marsh* (1987), 481 U.S. 200, 206, 95 L. Ed. 2d 176, 185, 107 S. Ct. 1702, 1707; see also *Watkins v. Sowders* (1981), 449 U.S. 341, 66 L. Ed. 2d 549, 101 S. Ct. 654 (jury instructed not to consider erroneously admitted eyewitness identification evidence); *Harris v. New York* (1971), 410 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (jury instructed to consider statement for impeachment but to disregard as substantive evidence of guilt); *Walder v. United States* (1954), 347 U.S. 62, 98 L. Ed. 503, 74 S. Ct. 354 (same).) Although the Supreme Court has recognized an exception to the general assumption that a jury follows instructions in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed.

2d 476, 88 S. Ct. 1620, the Court in *Richardson* noted that *Bruton* only "recognized a narrow exception" (*Richardson*, 481 U.S. at 207, 95 L. Ed. 2d at 185, 107 S. Ct. at 1707).

In *Bruton*, co-defendants were tried together; a non-testifying co-defendant's confession which expressly implicated the second defendant presented a situation "in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (*Bruton*, 391 U.S. at 135, 20 L. Ed. 2d at 485, 88 S. Ct. at 1627.) This case does not present a situation which would require this court to conclude that the jury did not or could not follow instructions.

Furthermore, even were we to conclude that it was error to exclude the rebuttal testimony if the complainant's statements were utilized by the jury in reaching a decision, we would not find error here. The jury was properly admonished to ignore the complainant's statement.

We also note that *People v. Sales* (1986), 151 Ill. App. 3d 226, which remanded a case for a new trial, addressed the issue of the prosecution's elicitation of statements from the complainant about her sexual history and is not inapposite. In *Sales*, the complainant, when questioned by the prosecution, testified that she had not had sexual relations with anyone in the 10 days prior to the attack and that prior to the attack she had never had sexual relations with anyone. The appellate court noted that "[e]liciting this testimony was clearly prohibited under the Illinois rape shield statute." (151 Ill. App. 3d at 231.) *Sales* supports an analysis prohibiting any reference to a complainant's sexual history or reputation but does not require that Sandoval receive a new trial. Unlike *Sales*, where the jury utilized the complainant's

testimony in reaching its decision, the jury in Sandoval's case was clearly and unequivocally instructed to ignore the complainant's testimony. As we noted above, errors corrected by the court with instructions to the jury do not require a reversal.

The second issue for review involves the trial court's refusal to allow testimony that the complainant had been seen out with a man just prior to the beginning of the trial. Sandoval argues this testimony was necessary to rebut complainant's testimony, first elicited during cross-examination, that she has not been able to date since the incident with the defendant.

This court has long noted that the latitude allowed on cross-examination and rebuttal is a matter within the sound discretion of the trial court; a reviewing court will not interfere unless there has been a clear abuse of discretion resulting in a manifest prejudice to the defendant. *People v. Collins* (1985), 106 Ill. 2d 237, 269; *People v. Peter* (1973), 55 Ill. 2d 443, 451-52.

Upon review of the record, we find no abuse of discretion resulting in prejudice to the defendant. What the complainant has done since the incident which resulted in the charges against the defendant has no relevance in a determination of the defendant's guilt or innocence. It is well accepted that a cross-examiner may not impeach the witness on a collateral matter; the answer must be accepted. (*Collins*, 106 Ill. 2d at 269.) Whether or not a matter is collateral may be determined by asking the question: Could the matter be introduced for any purpose other than to contradict? (*Collins*, 106 Ill. 2d at 269.) The question before the jury was whether the defendant forced the complainant to have anal and oral sex against her will. The subsequent effect on her life, that is, whether or not she was dating, could be offered for no other purpose than to contradict a statement of the complainant. It would present the jury with no addi-

tional information about the charges against the defendant. Absent an abuse of discretion, a reviewing court should not interfere with the trial judge's ruling. *Collins,* 106 Ill. 2d at 269-70.

For the reasons stated above, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE MILLER, specially concurring:

I concur in the court's judgment affirming the defendant's convictions. I would decide the case on grounds narrower than those relied on by the majority, however, and for that reason I write separately.

At the defendant's trial, the prosecutor asked the complaining witness on direct examination whether she had previously engaged in anal sexual relations with persons other than the defendant. The witness said that she had not. When defense counsel made inquiry on cross-examination to establish a foundation for later impeachment, the trial judge indicated that a foundation was not necessary and that he would allow the impeachment. The trial judge later reconsidered that ruling, however, and barred defense counsel from introducing, during the defendant's case in chief, testimony from a witness who would have contradicted the complainant's assertion. Before the jury began its deliberations, the judge struck the complainant's brief statement regarding her prior sexual conduct with persons other than the defendant and specifically admonished the jurors to disregard that evidence. The State concedes that the complaining witness' testimony was improper.

It is apparent that defense counsel's remedy was to object to the evidence, rather than attempt to impeach it. The "rape shield statute" (Ill. Rev. Stat. 1987, ch. 38,

par. 115—7), applicable in prosecutions for aggravated and unaggravated offenses of criminal sexual assault and criminal sexual abuse, bars the introduction of evidence concerning a victim's prior sexual conduct with persons other than the accused. The statute expresses the judgment that such evidence is irrelevant, and the statute thus removes a potential disincentive to the prosecution of those offenses. The statute does not purport to establish an evidentiary privilege, which a witness may elect to assert or waive, but is instead phrased as a general prohibition, applicable to both the prosecution and the defense. It is therefore something of a fiction to say, as the appellate court did in the proceedings below, that the complainant in this case waived the protection of the statute by her testimony. (See, *e.g.*, 178 Ill. App. 3d at 675 ("In the present case, however, the victim, by her own action at trial, rendered her past sexual activities relevant and thus admissible").) The statutory bar on such evidence is not eliminated simply because prohibited testimony already has been introduced through the complaining witness.

Although defense counsel did not make a contemporaneous objection to the prosecutor's improper question, the trial judge subsequently granted the defendant appropriate relief. At the close of evidence, the trial judge struck the complainant's testimony concerning her prior sexual conduct with others and instructed the jurors to disregard her statement. I agree with the majority's ultimate conclusion that the trial judge's actions were sufficient to cure any error occurring in the introduction of the evidence. In light of that result, it is appropriate to question the usefulness of the majority's detailed discussion of two additional issues, the defendant's confrontation right, and the circumstances under which evidence of prior sexual conduct would ever be admissible, and I do not join those portions of the opinion. Indeed, the

court appears to recognize the hypothetical nature of its treatment of those issues when it declares, "Furthermore, even were we to conclude that it was error to exclude the rebuttal testimony if the complainant's statements were utilized by the jury in reaching a decision, we would not find error here. The jury was properly admonished to ignore the complainant's statement." 135 Ill. 2d at 193.

With respect to the second question raised on appeal, I agree with the court's conclusion that the complaining witness' social activity subsequent to the offenses charged here was a collateral matter, and that the impeaching testimony proffered by defense counsel was properly excluded on that basis. Finally, I note that in the appellate court the defendant raised an issue concerning his sentence, which that court did not address in light of its decision granting the defendant a new trial. In the appellee's brief filed before this court, defense counsel correctly observes that the appellate court did not reach the sentencing issue. Counsel has not, however, made an alternative request for relief in the event we affirm the defendant's convictions: counsel neither presents the sentencing issue as grounds for cross-relief, nor asks that the cause be remanded to the appellate court for consideration of the question. Accordingly, one may conclude that the issue has been abandoned.