**James Larandy PACK, Petitioner–Appellant,**

v.

**Thomas F. PAGE, Warden, Menard Correctional Center, Respondent–Appellee.**

No. 96–3944.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1998.

Decided June 17, 1998.

Robert J. Palmer, Leslie Heuer, Law Student (argued), May, Oberfell & Lorber, South Bend, IN, for Petitioner–Appellant.

Paul Chevlin, Lorna Trinidad DeLeon Amado (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before COFFEY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

James Pack is serving 67 years' imprisonment in Illinois for sexual offenses against minors. His first sentence, to 7 years' imprisonment, followed his conviction for aggravated sexual abuse because he fondled the penis of J.M., a boy then 9 or 10 years old. His second conviction, for aggravated sexual assault (three rapes of C.T., a 9–year–old girl), led to a 60–year sentence after the judge concluded that Pack has sexually abused at least four minors in total. Pack seeks collateral relief from the 7–year sentence. The district judge concluded that constitutional error occurred during the trial but was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). We affirm on the alternative ground that Pack has not demonstrated that the decision of the state's appellate court affirming his conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), the standard applicable to this post-AEDPA filing. *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

J.M. testified that the molestation occurred during the summer of 1988. After playing with Pack's son Randy one afternoon, J.M. received his family's permission to spend the night at the Pack residence. J.M. and Randy took a bath together, and according to the testimony Pack entered the bathroom and committed the offense (on the pretext that he was checking for a rash) after Randy left. J.M. told Randy what had happened but did not tell any adult until April 1990. J.M.'s mother, and a police officer, testified that J.M.'s story had been consistent between April 1990 and the trial that December (by which time J.M. was 12). This delay was a centerpiece of the defense, for it implied that J.M. had invented the charge after relations between the families deteriorated—though Randy testified at trial that J.M. had related the incident to him the day it occurred. Another element of the defense was a contention that J.M. had been banned from the Pack household by Pack's mother and could not have spent the night, as he said. But Pack's son Randy, and his daughter Lisa, each testified that J.M. had stayed over at least once in the summer of 1988. Randy recited that his father instructed him to lie about what had happened and to testify that his earlier support of J.M.'s story had been the result of threats; Lisa likewise testified that her father had asked her to say that someone had threatened Randy in order to get him to support J.M.'s story. Still a third element of the defense was that the Pack children did not move into the house near J.M.'s until late August 1988, a month after J.M. says that the sexual contact occurred.

J.M.'s testimony was the centerpiece of the prosecution's case. Two neighbors testified that J.M. had a poor reputation for honesty. Pack sought to further undermine J.M.'s testimony by introducing the report of a caseworker for the Department of Children and Family Services. According to this report, in May 1989 J.M. told the social worker that "approximately one year ago" he had been "touched" by a neighbor named Rick Tyler when visiting Tyler's home:

> [T]he kids were at church at the time and he was helping him clean on a Sunday night. It was summertime. He began touching me all over and stuff. He touched me on my private with his hand. He stated he began to take his clothes off and wanted to take a bath. He stated that he moved his penis around and he demonstrated by moving his hand in an up-and-down motion.... He said that the incident ended when the wife and kids came home and he heard them.

Pack's lawyer wanted to use this report to show that J.M. fabricates accusations of sexual abuse. But the prosecutor objected on the basis of the state's rape-shield statute,

which provides that a complainant's sexual history is irrelevant and inadmissible in a sexual assault case. 725 ILCS 5/115–7. The trial judge excluded the evidence, and in an unpublished opinion the state's appellate court affirmed. The appellate court recognized that when the constitutional right to confront adverse witnesses permits proof of a complainant's sexual history, the statute yields. See *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). The Supreme Court of Illinois has held, in particular, that defendants are constitutionally entitled to adduce evidence that the complaining witness has made false charges against other persons. *People v. Sandoval*, 135 Ill.2d 159, 142 Ill.Dec. 135, 552 N.E.2d 726 (1990). So the law supported Pack's argument—but, the state court held, the facts did not, writing:

> [D]efendant failed to offer any evidence that J.M.'s previous molestation claim was false. Additionally, the defendant failed to offer any evidence showing that the victim had confused the two incidents. Since the defendant failed to offer sufficient evidence of the relevance of the other molestation claim, we cannot say that the trial court abused its discretion in excluding the evidence.

This paragraph supplies the springboard for Pack's argument in federal court. If there was no reason to think J.M's report to the social worker in May 1989 false, then the report must have been true. Yet Pack insists that it is unlikely that if two neighbors had molested J.M. in substantially the same way in the summer of 1988 he would have mentioned only one of these incidents to the social worker. If J.M.'s accusation against Tyler is true, the argument concludes, this makes it more likely that his accusation against Pack is false and makes introduction of the report all the more essential to the defense. The district judge accepted this argument, concluded that Illinois had violated Pack's right to confront his accuser, but deemed the error harmless.

■ One problem with this argument is that it rests on a proposition about child psychology that Pack wants us to take on faith. We have no idea how likely it is that a

child, molested by two adults, would report one event but not the other. (Nor do we know how frequently children are assaulted by two adults during one year.) A second problem is that Pack has changed positions between state and federal court. He argued to the state tribunals that the report was admissible to show its falsity, a good ground under *Sandoval;* now he argues that the report was admissible to show its truth. How can it be "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" to reject as (factually) untenable a line of argument that Pack now all but concedes *was* untenable?

■ The difficulty with Pack's position ultimately is deeper than either of these problems. As we held in a portion of *Lindh v. Murphy*, 96 F.3d 856, 868–71 (7th Cir.1996) (en banc), that the Supreme Court did not disturb, the amended § 2254(d)(1) does not interfere with federal courts' authority to say what constitutional law is but does require federal courts to respect states' reasonable applications of those principles to particular cases. Pack does not contend that the state courts got the law wrong; the Illinois judges did not suppose that a rape-shield statute always prevails over a defendant's interest in undermining the testimony of his accuser. They applied a balancing approach under which the trial judge had discretion to weigh the competing interests, an approach that we have since held to be constitutionally adequate. *Stephens v. Miller*, 13 F.3d 998 (7th Cir.1994) (en banc). *Lindh* holds that when federal constitutional law calls for the exercise of discretion, and thus poses a question of degree, "a responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment" under § 2254(d)(1). 96 F.3d at 871. That is an apt description of how the state court treated Pack's argument; its disposition is not unreasonable.

Now if the Constitution required state courts to consider the possibility that evidence might be admissible on a ground not advanced, then the failure of the Illinois judiciary to consider the consequences of the possibility that J.M. told the truth to the

social worker in 1989 would place this case outside the scope of § 2254(d)(1), for that statute governs only when the state court has addressed the constitutional claim on the merits. *Liegakos v. Cooke*, 106 F.3d 1381 (7th Cir.1997). No decision of the Supreme Court establishes such a rule, however. Indeed, the Supreme Court has yet to hold that any application of a rape-shield statute is inconsistent with the Constitution, making it particularly hard to say that failure to make a constitutional exception to a rape-shield law—which is what Pack needs in order to prevail—is "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States". Our encounter with the subject in *Stephens* did not produce "clearly established" law even at the circuit level; the court was unable to assemble a majority for any particular approach. All *Stephens* shows is that courts must give earnest consideration to the possibility that excluding evidence under a rape-shield law may interfere unduly with the defendant's opportunity to present a defense of innocence. The Illinois appellate court thought about that question and concluded that Pack had, and used, several means independent of the statement to undercut J.M.'s credibility. Whether or not we would have reached the same conclusion had we been hearing the case on direct appeal is beside the point. Section 2254(d)(1) limits collateral attack to errors so grave that the state's handling of the litigation must be called "unreasonable." That appellation cannot be applied to the decision in Pack's case.

AFFIRMED.