SECOND DIVISION
September 28, 2010

No. 1-08-1536

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 06 CR 25626 |
| | ) | |
| CORDELLO FREEMAN, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant Cordello Freeman was convicted of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)) and was sentenced to 12 years' imprisonment. He raises three issues on appeal: (1) the circuit court erred in admitting testimony in violation of the rape shield statute (725 ILCS 5/115-7 (West 2004)); (2) the circuit court erred in failing to make a timely ruling on his motion *in limine* to preclude admission of his prior convictions; and (3) the circuit court impermissibly enhanced his sentence based on the victim's age when that was an element of the crime for which he was convicted. For the following reasons, we affirm defendant's conviction and sentence.

The following facts were adduced from the trial testimony of the victim, B.A.; her sister, Adrea; her mother, Renee Ballard-Ross; and Carey Kato, a forensic interviewer with the Chicago Children's Advocacy Center, who interviewed B.A. after the assault. The victim, B.A., is the younger sister of Tiffany Ballard, defendant's former girlfriend and the mother of his son. In the summer of 2006, B.A. was 12 years old and had just completed sixth grade. On July 18, 2006,

defendant was at the home in which B.A. lived with Tiffany and the rest of their family to visit his son. At approximately 11:30 p.m. that evening, B.A. was lying on the bed in Tiffany's basement bedroom watching television. Tiffany went to the store but defendant stayed at the house and watched television with B.A. During a commercial break, B.A. attempted to leave the room. Defendant grabbed her by the arm and pulled her down onto the bed. He then used his legs to force her legs apart, slid her underwear to the side, and vaginally penetrated her. She testified that his penis was fully inside of her and that the assault lasted for about five minutes. During the assault, defendant covered B.A.'s mouth with one hand and used his other hand to hold her arm over her head. B.A.'s younger sister, Adrea, walked past Tiffany's bedroom at that time and saw B.A. crying while defendant was on top of her. Adrea entered the room and interrupted the assault. Defendant then stood up and Adrea went upstairs to tell her mother what had happened. Defendant left the house and B.A. went upstairs. B.A.'s mother called the police, who took B.A. to the hospital.

Before calling the emergency room doctor, Dr. Nagui Hanna, to testify at trial, the State requested a sidebar, during which the following colloquy took place:

"MS. EGAN [Assistant State's Attorney]: During my prep of [Dr. Hanna], there is indication [sic] in his notes that he asked the victim if she ever engaged in sexual behavior before. I understand from rape shield laws that is not admissible, but the victim told the [d]octor she had never had sex before.

THE COURT: He didn't have to ask that, does he?

1-08-1536

MS. EGAN: In this particular case, this knowledge helped him form his opinion. In other words, the *** size of the tear to the hymen, location of the tear, the fact that she had never had sex before became relevant in his determination *** [that] he believes the combination of the *** injury to the outside of the vagina and hymen tear is consistent with sexual penetration. Because she had never had sex before, he said that was a relevant fact in his making that determination.

THE COURT: What do you say, Mr. Gallagher [defense counsel]? If that's part of the diagnosis, I can see if she never had sex before. It's a 12-year-old girl.

MR. GALLAGHER: It is and she already testified. There is no way we can cross examine her. *** There is no way for us to question her about that topic at this time since it's now being brought up and she already testified. I suppose if we had known that it was part of the diagnosis [and that the State intended to use that information] beforehand, the Court might have found that *** we would be allowed to ask her about that topic.

***

THE COURT: Do you want me to call her back and ask her that? It's part of the [d]octor's diagnosis based on the fact she is a 12-year-old girl. There is injury to the girl's vaginal area. He said he considered that fact in determining

- 3 -

there was sexual abuse[,] the fact there was no prior sexual conduct of the 12-

year-old girl.

      MR. GALLAGHER: I understand.

      THE COURT: You can bring it out.  Don't emphasize.

      MS. EGAN: I will.

      THE COURT: It's a violation of the rape shield act.  As part of the

diagnosis you can bring it out, but don't dwell on it."[1]

Dr. Hanna then testified that he treated B.A. upon her arrival to the hospital emergency

room.  B.A. indicated that she was 12 years old and described her injury as a sexual assault with

penetration.  He asked her about her previous sexual history and she told him that she had "never

had sex before."  He collected evidence as part of a criminal sexual assault kit and performed a

genital exam on B.A.  He observed bruising and tenderness in the external areas of the vagina,

indicating that force had been used.

He then began an examination of the internal areas of the vagina.  He explained that

when a person has not had any prior sexual contact, he would expect the hymen, a membrane

that separates the inner and outer parts of the vagina, to be "intact, meaning there are no tears."

It would not be "broken and [would] still [be] in its native shape and form[,] meaning that

---

[1] The effect of the court's order, although poorly worded, was to admit the

testimony with the limiting instruction that it may only be introduced for diagnostic

purposes.

there's been no penetration through it into the vagina." When asked whether B.A.'s lack of prior sexual contact was relevant to his diagnosis, he replied:

"Yes. When I examined her, I was expecting to see a hymen that was intact and had not been broken before. *** [Instead,] I saw [a] one millimeter tear[,] which is a very small tear[,] in the lower part of the hymen indicating there was an attempt to break it. *** [The tear] was recent, meaning it happened in the last few days."

He also explained that, generally, when examining a sexual assault victim, he inserts a speculum into the vagina to conduct an examination inside of the vagina. However, he does not perform that test when the victim has not had previously had sex because it is likely to rupture the hymen.

Dr. Hanna concluded that the combination of the bruises on the outside of the vagina, the tenderness and pain B.A. described, and the tear in the hymen indicated that "there was some force or attempt at penetrating the vagina. Usually it's assumed from intercourse or attempt at intercourse." He further testified that this combination of injuries is consistent with a sexual assault allegation.

As part of his cross-examination, defense counsel explored Dr. Hanna's observations about B.A.'s hymen. Defense counsel acknowledged that B.A. had not previously had sex before and prompted Dr. Hanna to again testify that B.A.'s hymen was "intact," except for what he described as a "minute tear" of about one millimeter. Defense counsel then prompted Dr. Hanna to testify that if an erect penis fully penetrated the vagina for five minutes, the hymen would have ruptured or the tear in the hymen would have been larger than one millimeter. Dr.

Hanna agreed that the injury to B.A.'s hymen was consistent with the tip of the penis entering the vagina. Additionally, Dr. Hanna testified that he did not observe any bleeding around the tear in B.A.'s hymen. Defense counsel also elicited testimony that Dr. Hanna documented no other signs of trauma or bruising on B.A.'s body.

Following Dr. Hanna's testimony and the dismissal of the jury, the court informed defendant that he would have to decide whether he would testify on his own behalf. Defense counsel then requested a ruling on his motion *in limine* to bar the State from introducing evidence of defendant's two prior felony convictions for impeachment purposes. The court determined that it would not rule on the motion at that time because it was "premature," citing Luce v. United States, 469 U.S. 38, 41-42, 83 L. Ed. 2d 443, 448, 105 S. Ct. 460, 463 (1984). The court further stated:

> "In order for me to make [an] intelligent ruling [on] whether or not the
> State can use any evidence for impeachment convictions [*sic*] which they wish to
> offer[,] which is the question to begin with, I cannot do that unless the [d]efendant
> does, in fact, testify. I will not speculate what he would say if he were to testify,
> to begin with. I am not making a ruling at this point on your motion because at
> this point[,] it's premature."

The State presented two more witnesses and entered two stipulations before resting its case. Defendant then unsuccessfully moved for a directed verdict.

Defendant's theory of the case was that Renee Ballard-Ross, the victim's mother, did not want defendant living in her home because she could not afford to support him along with her

six children and her grandchild. In support of that theory, defendant called Janelle Allen-Holloway. She was defendant's caseworker at Kids' Hope United, a private agency affiliated with the Department of Children and Family Services (DCFS). She testified that at the time of the offense, defendant was 18 years old and was still under the care of DCFS. She testified that defendant and Ballard-Ross sought to have defendant placed with Ballard-Ross as a foster child. She testified that if Ballard-Ross became defendant's foster parent, she would collect a stipend to defray the cost of supporting him. However, her efforts to place defendant in Ballard-Ross' home ultimately were unsuccessful. According to defendant's theory, when Ballard-Ross was unable to secure defendant's placement and collect the stipend, she had B.A. make a false claim of sexual assault against defendant to ensure that he would not return to the household.

The jury ultimately found defendant guilty. In his posttrial motion, he asserted 21 errors that he claimed should result in a new trial. The circuit court denied his motion.

Defendant's presentence investigation report (PSI) disclosed that he was 18 years old at the time of the offense and 20 years old at the time of sentencing. The PSI revealed that defendant had been convicted of two prior felonies. In 2005, defendant pled guilty to unlawful restraint. He served 194 days in the Joliet Adult Detention Center and completed a 2-year probation sentence. Defendant was later convicted of possession of a controlled substance with intent to deliver and was serving a 3-year probation sentence at the time he committed the present crime. The PSI also revealed that defendant entered DCFS custody at age three because of his mother's drug addiction. He lived with various family members throughout his life and experienced physical abuse at the hands of his cousin from ages three to six. However, he

maintained positive relationships with his mother and siblings and has a "wonderful" relationship with his son.

At the sentencing hearing, defendant again called Allen-Holloway to testify in mitigation. She testified to his history in the DCFS system and his experience with neglect and physical abuse. She testified that he received his high school equivalency degree while he was incarcerated and later enrolled in a trade school to pursue a barber's license.

In allocution, defendant stated that he was "hurt throughout this whole situation" because he "look[ed] at the victim as family." He said that the encounter between him and B.A. was a "misunderstanding." He said that he would "just look towards the future; and, hopefully, [he] will get a chance to be back out there with [his] son and continue to live [his] life."

The State then argued in aggravation that defendant showed no remorse for assaulting B.A. and was only upset about how the incident affected his life. The State highlighted his criminal history and argued that although he had a rough childhood, that did not justify sexually assaulting a young girl. The State also argued that the assault on B.A. was not a "misunderstanding," as defendant characterized it, but was "forced, sexual penetration" in which defendant held B.A. down and took advantage of her in her own home, where she felt safest.

Defense counsel responded that defendant is entitled to the minimum sentence because he is intelligent, able to improve himself, and capable of being rehabilitated. He took the initiative to procure his high school equivalency degree and sought a barber's license. Additionally, he enrolled in sex abuse counseling and expressed his desire to continue his relationship with his son.

The court criticized defendant's characterization of the sexual assault of a 12-year-old girl as a "misunderstanding," finding it to be "an odd choice of words." It also criticized defendant's reference to B.A. as "family" and remarked that "having sex with a 12 year old is not exactly looking upon someone as being part of your family." Additionally, referring to the assault of B.A. as a misunderstanding was "insensitive on his part[;] looked upon her as family[,] again[,] insensitive to what the girl went through." The court remarked that in general, defendants end up in prison through their own actions and "when you decide to have sex with a 12-year-old girl, that's what will get you there." The court also stated that sexual assault is the "kind of a crime that a [victim] lives with for a long time."

The court commented further on defendant's prior criminal history, noting that he had two prior felony convictions and was on probation at the time of the current offense. The court further noted that defendant previously served 194 days in prison, which "apparently didn't phase [him] in the slightest." The court remarked that defendant was not a "first timer in the system, which is other aggravation circumstances [sic] besides that girl was [12], besides the fact that she someone [sic] who probably looked at him for support being the father of *** her niece or nephew *** but he looked upon her as just another person he wanted to have sex with at the age of 12."

The court considered other disclosures in the PSI as well. It acknowledged that defendant had a difficult upbringing, but others who have similar childhoods "don't go around having sex with a 12 year old. They have to deal with the situation. And dealing with it is not having sex with a 12 year old." The court noted that there was no evidence that defendant was

sexually abused himself, but that in any event, that would not mitigate the abuse perpetrated on B.A. Ultimately, the court noted that as a Class X offender, defendant was eligible for a sentence between 6 and 30 years, and sentenced him to 12 years' imprisonment.

Defense counsel then filed a motion to reconsider the sentence. In it, counsel argued, *inter alia*, that the court "improperly considered in aggravation matters that are implicit in the offense." The court denied the motion, stating that the sentence was "reasonable" but "significant [because] the crime was significant and the prior record significant also." Defendant then filed this appeal from his conviction and sentence.

Defendant first argues that the circuit court committed reversible error in admitting Dr. Hanna's testimony that B.A. had "never had sex before" in violation of section 115-7(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7(a) (West 2004)), which limits the admissibility of evidence related to the prior sexual history or reputation of a sexual assault victim. In response, the State argues that Dr. Hanna's testimony was admissible under section 115-13 of the Code (725 ILCS 5/115-13 (West 2004)), which makes a sexual assault victim's out of court statements to a doctor made for the purpose of medical treatment or diagnosis admissible as substantive evidence.

Defendant concedes that he did not preserve this issue for appeal and that it is forfeited. Nevertheless, we may review this issue for plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). The plain error doctrine permits a reviewing court to consider unpreserved errors where: (1) an error occurs and the evidence is so closely balanced that the error alone "threatened to tip the scales of justice against the defendant," regardless of the seriousness of the

error; or (2) an error occurs which is so serious that it affected the fairness of the trial and undermined the integrity of the judicial process, regardless of the closeness of the evidence. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007), citing People v. Herron, 215 Ill. 2d 167, 186-87 (2005).

Defendant argues that the court's error requires reversal under either prong of a plain error analysis. He argues that the evidence was closely balanced because there was no physical evidence to support B.A.'s claim of sexual assault and the testimony provided was inconsistent. Thus, Dr. Hanna's testimony "tipped the scales" against him because the State relied on that testimony as proof that B.A. had been assaulted. Defendant also argues that the court's admission of the testimony, in contravention of section 115-7, was so serious that it denied him a fair trial.

Nevertheless, if there is no error, there can be no plain error. Thus, we must first determine whether admitting Dr. Hanna's testimony was error. Piatkowski, 225 Ill. 2d at 565.

In Illinois, we do not have a uniform system of codified evidentiary rules; rather, our rules of evidence generally derive from the common law. But see Ill. R. Evid. 101 *et seq.* (adopted Sept. 27, 2010, eff. Jan. 1, 2011). However, in certain circumstances, our legislature has created statutory rules of evidence. See, *e.g.*, 725 ILCS 5/115-5 *et seq.* (West 2008). The challenged evidence in this case is arguably governed by two statutory rules of evidence, sections 115-7(a) and 115-13 of the Code. Thus, we must examine the applicable statutes and determine which statute the legislature intended to apply to the admissibility of Dr. Hanna's testimony.

Section 115-7(a) of the Code, commonly referred to as the "rape shield statute," was first enacted in Illinois in 1978 (Ill. Rev. Stat. 1979, ch. 38, par. 115-7) and has since been amended several times. The statute in effect at the time of the offense in this case provided in relevant part:

"In prosecutions for predatory criminal sexual assault of a child [720 ILCS 5/12-14.1 (West 2004)] *** the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted." 725 ILCS 5/115-7(a) (West 2004).

Our supreme court has on two occasions interpreted section 115-7(a) as "absolutely bar[ring] evidence of the alleged victim's prior sexual activity or reputation, subject to" the two exceptions contained in the statute. People v. Santos, 211 Ill. 2d 395, 401-02 (2004); People v. Sandoval, 135 Ill. 2d 159, 170-71 (1990). The court concluded that the statute is "neither vague nor ambiguous" in preventing either party from introducing evidence of the victim's prior sexual history, specifically noting that it "does not limit its proscription to a defendant's attempts to introduce evidence of the victim's prior sexual encounters." Sandoval, 135 Ill. 2d at 170. Furthermore, the statute makes "no exception based on the purpose for which the evidence is

offered." Santos, 211 Ill. 2d at 395. Thus, section 115-7(a), as interpreted by our supreme court, is unambiguous in making evidence of the victim's prior sexual history inadmissible.

The General Assembly subsequently enacted section 115-13 of the Code, which provides:

> "In a prosecution for violation of Section *** 12-14.1 *** of the [Code], statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of the symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." 725 ILCS 5/115-13 (West 2004).

Section 115-13 is a "codification of the common law rule permitting the hearsay use of information revealed in medical treatment." People v. Falaster, 173 Ill. 2d 220, 229 (1996), citing People v. Roy, 201 Ill. App. 3d 166, 179 (1990). The admission of such testimony is limited to those cases involving certain sex offenses, including the offense for which defendant was prosecuted. 725 ILCS 5/115-13 (West 2004).

We have previously observed that the plain language of section 115-13 "evinces a legislative intent to apply this provision broadly," encompassing testimony from nurses, treating doctors, evaluating doctors, or any other medical professional that is reasonably pertinent to diagnosis or treatment where it provides details of the sexual act committed, "including how, when, and where the act occurred." Roy, 201 Ill. App. 3d at 178; see also People v. Davis, 337 Ill. App. 3d 977, 990 (2003). In In re T.T., we explained that a doctor's testimony regarding

other circumstances of the attack, including "how [the victim] was penetrated, the pain, and the offender's use of a lubricant," was admissible because it was relevant to the doctor's assessment that the victim sustained sexual abuse. In re T. T., 384 Ill. App. 3d 147, 164 (2007). Significantly, in Falaster, our supreme court further expanded the scope of admissible testimony to include statements regarding the victim's prior sexual history with the defendant. See Falaster, 173 Ill. 2d at 223, 229. In that case, the court admitted a nurse's testimony in which she recounted the victim's disclosure that she had begun engaging in oral and vaginal sex with the defendant, her father, approximately five years earlier. Falaster, 173 Ill. 2d at 222-23. Thus, section 115-13, as interpreted by our supreme court and appellate courts, is unambiguous in making a doctor's testimony recounting a victim's sexual history admissible, provided that it is relevant to the doctor's opinion that the victim was, in fact, sexually abused. See Falaster, 173 Ill. 2d at 228-29; In re T. T., 384 Ill. App. 3d at 164-65.

Thus, we are confronted with one statutory rule of evidence that would make Dr. Hanna's testimony that B.A. had "never had sex before" inadmissible and one statutory rule of evidence that would make the statement admissible. Ordinarily, when two rules of evidence conflict, courts may consider whether the evidence is admissible for one purpose, but not for another. See, *e.g.*, People v. Moss, 205 Ill. 2d 139, 156 (2001) (evidence of other crimes is generally inadmissible to demonstrate a propensity to commit another crime; however, other-crimes evidence is admissible to prove intent, *modus operandi*, identity, motive, or absence of mistake). In such cases, trial courts exercise their broad discretion to make those determinations in light of the parties' arguments for and against admissibility. Moss, 205 Ill. 2d at 156.

However, in this case, we are presented with two unambiguous legislative enactments that make the same piece of evidence simultaneously admissible and inadmissible; thus, we must turn to the rules of statutory construction to resolve this conflict. See Moore v. Green, 219 Ill. 2d 470, 479 (2006). Where the plain language of one statute appears to conflict with the plain language of another statute, we must look beyond the plain language of the statutes to determine the legislature's intent, which is of paramount importance. Moore, 219 Ill. 2d at 479. The legislature is presumed to know of existing statutes at the time it enacts new statutes. People v. Jones, 214 Ill. 2d 187, 199 (2005). Thus, we cannot presume that the legislature would enact a law that completely contradicts an existing law, thereby repealing the predecessor statute by implication. Moore, 219 Ill. 2d at 479. Rather, we must attempt to construe the conflicting statutes together, *in pari materia*, where such an interpretation is reasonable. Moore, 219 Ill. 2d at 479. Additionally, to resolve this conflict, we may ascertain the legislature's intent by considering the purposes of the statutes, the problems that they target, and the goals they seek to achieve. Moore, 219 Ill. 2d at 479-80.

As Sandoval recounts, prior to the enactment of section 115-7, evidence of a victim's sexual history was admissible at trial when the defendant asserted an affirmative defense of consent. Sandoval, 135 Ill. 2d at 167-68. However, consistent with traditional evidentiary rules regarding the admissibility of evidence of a witness's character and reputation, such evidence was limited to testimony regarding the victim's general reputation for immorality and unchastity and did not include specific acts of immorality or promiscuity. Sandoval, 135 Ill. 2d at 167-68, citing People v. Ellison, 123 Ill. App. 3d 615, 624 (1984); see also Fed. Rs. Evid. 404(a) (with

- 15 -

limited exceptions, evidence of a person's character is inadmissible for proving conformity therewith), 608(b) (with limited exceptions, specific instances of a witness's conduct are inadmissible for demonstrating truthfulness). Because lack of consent was an element of the sexual assault offense, it was deemed permissible to allow a defendant to introduce evidence of the victim's general reputation for unchastity and immorality as it was more likely that " 'an unchaste woman would assent to such an act than a virtuous woman.' " Sandoval, 135 Ill. 2d at 168, quoting People v. Collins, 25 Ill. 2d 605, 611 (1962).

However, with the passage of section 115-7, the legislature prohibited defendants from introducing any evidence of the victim's sexual history, except as between the defendant and the victim where it was pertinent to a consent defense. Ill. Rev. Stat. 1979, ch. 38, par. 115-7. In enacting the statute, the bill's sponsor declared that its purpose "is to protect the rape victim from being harassed and abused as they have been in the past." 80th Ill. Gen. Assem., House Proceedings, May 11, 1977, at 65 (statements of Representative Jaffe). Speaking in favor of the bill, Representative Geo-Karis stated that the statute would prevent defense attorneys from "destroy[ing] and victimiz[ing] a victim in a rape case." 80th Ill. Gen. Assem., House Proceedings, November 3, 1977, at 58 (statements of Representative Geo-Karis). Representative Cunningham added that the bill is a "compassionate" one, "designed to protect the dignity" of sexual assault victims. 80th Ill. Gen. Assem., House Proceedings, November 3, 1977, at 58 (statements of Representative Cunningham).

Representative Jaffe also referred to a floor debate on an earlier, albeit unsuccessful, version of the bill in which he summarized the findings of the General Assembly's Rape Study Committee, which concluded:

"We have the problem [that] many women never report rape because they fear the publicity and the rapist[s'] threats and they fear the police and the court system. *** [A] woman who has claimed to be raped can be questioned about her past sexual behavior even [if] it has nothing to do with the case, which in effect turns her into the defendant. *** Whenever you have a rape case you have the victim really being turned into the defendant. The victim is constantly asked over and over and over again about here [*sic*] sex history. It happens on the trial level and it happens when the State's Attorney interrogates her. It happens when the police interrogate her. So as a result of that *** you'll find that women are very hesitant to come forward and report the crime of rape and they're very hesitant to go through the entire of [*sic*] rape because they felt that they are abused time and time and time again." 79th Ill. Gen. Assem., House Proceedings, March 19, 1975, at 29-30 (statements of Representative Jaffe).

The evidentiary rationale for precluding a defendant from introducing evidence of the victim's sexual history with people other than the defendant is rooted in the fact that such evidence is irrelevant to the issue of whether the victim consented to sexual relations with the defendant. See Sandoval, 135 Ill. 2d at 177-78; see also Ellison, 123 Ill. App. 3d at 624 (quoting Senator Washington in a floor debate as stating, " 'I find just impossible to understand how past

sexual conduct is relevant at all to the case' "), quoting 80 Ill. Gen. Assem., Senate Proceedings,

November 22, 1977, at 8-9 (statements of Senator Washington).  We summarized this policy in

People v. Summers by stating that section 115-7 was intended to:

> "prevent the defendant from harassing and humiliating the complaining witness
>
> with evidence of either her reputation for chastity or specific acts of sexual
>
> conduct with persons other than defendant, since such evidence has no bearing on
>
> whether she consented to sexual relations with the defendant."  Summers, 353 Ill.
>
> App. 3d 367, 373 (2004), *aff'd*, 214 Ill. 2d 548 (2005).

Moreover, in Santos, the supreme court rejected the defendant's attempt to introduce two

conflicting statements made by the victim involving a false allegation of rape as an improper

attempt to introduce evidence that was collateral to any material issue in the case.  Santos, 211

Ill. 2d at 405-06 ("[w]hether [the victim] had, unbeknownst to defendant, engaged in sexual

relations with someone else is *wholly* unrelated to the question of whether defendant reasonably

believed that [the victim] was of age when the act of sexual penetration took place, which was

the only controverted issue on this charge" (emphasis in original)).

However, the policies underlying section 115-7 took shape long before the legislature

had enacted section 115-13 and in a different context.  Section 115-13 was enacted in 1998 as a

codification of the holding in People v. Gant, 58 Ill. 2d 178, 186 (1974), in an effort to prevent

the inconsistent application of that legal rule in the trial courts.  85th Ill. Gen. Assem., House

Proceedings, May 22, 1987, at 268 (statements of Representatives McCracken and Homer).

In Gant, the supreme court adopted the proposition:

" 'Statements of a presently existing bodily condition made by a patient to a doctor consulted for treatment are almost universally admitted as evidence of the facts stated ***. *** [T]heir reliability is assured by the likelihood that the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician. ***

'The exception [to the hearsay rule] might be taken one step further to encompass statements made to a physician concerning the cause or the external source of the condition to be treated.' " Gant, 58 Ill. 2d at 186, quoting E. Cleary, McCormick on Evidence § 292, 690-91 (2d ed. 1972).

The legislature made clear that it only intended for the rule to apply in those cases involving certain sexual offenses. 85th Ill. Gen. Assem., House Proceedings, May 22, 1987, at 269 (statements of Representatives Homer and McCracken) (Representative Homer: "Your bill codifies [Gant] with regard to sex offenses. *** [W]as it your intent to change the current rule with respect to the admissibility of such statements in the prosecution of other kinds of cases[?]" Representative McCracken: "No. Not at all and it should not be interpreted as such"); 725 ILCS 5/115-13 (West 2004). Moreover, the sexual assault victim's statements must be admitted "as evidence of the facts stated." 85th Ill. Gen. Assem., House Proceedings, May 22, 1987, at 268 (statement of Representative Homer).

As discussed above, section 115-13 codified a common law rule of evidence. Historically, the evidentiary rationale for admitting such hearsay testimony as substantive evidence was rooted in the "substantial guarantees of trustworthiness" and "special guarantees of

credibility" inherent in such statements made by patients to medical personnel because patients know that a false statement may cause misdiagnosis or mistreatment. White v. Illinois, 502 U.S. 346, 355, 116 L. Ed. 2d 848, 859, 112 S. Ct. 736, 742 (1992) (construing section 115-13); see also Roy, 201 Ill. App. 3d at 179 (medical hearsay testimony has historically been regarded as highly reliable because a patient's desire for proper diagnosis and treatment outweighs any motive to lie).

In light of the above, we can construe sections 115-7(a) and 115-13 together so as not to offend the purpose of either statute: their construction turns on relevance. The purpose of excluding evidence under section 115-7(a) is to bar irrelevant and prejudicial evidence of the victim's sexual history that has no bearing on whether the victim consented to sex with the defendant but instead is used to harass the victim. The purpose of admitting evidence under section 115-13 is to admit evidence that is otherwise relevant and reliable, but would be barred by the hearsay rule. Thus, a victim's sexual history, or lack thereof, taken by the examining doctor following a sexual assault examination comports with both statutes because it is relevant to a determination of whether the victim was sexually assaulted but does not have the effect of harassing the victim.

We find support for this conclusion in Sandoval. In examining Michigan's rape shield statute, Sandoval acknowledged the possibility that under certain "extraordinary circumstances," a sexual assault victim's prior sexual history could be relevant and admissible to explain " ' "a victim's physical condition indicating intercourse." ' " Sandoval, 135 Ill. 2d at 184-87, quoting People v. Hackett, 421 Mich. 338, 355 n.4, 421 N.W.2d 120, 128 n.4 (1984), quoting United

States v. Kasto, 584 F.2d 268, 271 n.2 (8th Cir. 1978). Similarly, Sandoval recognized that a New Hampshire court permitted evidence of a victim's prior sexual history where it was relevant to explain physical injuries. Sandoval, 135 Ill. 2d at 187, citing State v. LaClair, 121 N.H. 743, 746, 433 A.2d 1326, 1329 (1981).

Here, Dr. Hanna testified that the fact that B.A. had "never had sex before" was relevant to his examination and ultimate conclusion that she had been sexually assaulted. Dr. Hanna testified that the lack of prior sexual contact was an important fact that explained the presence of the recent tear he observed in the hymen. Additionally, he altered the internal vaginal exam to avoid further damage to the hymen. Moreover, the combination of the hymen tear and the external vaginal bruising led Dr. Hanna to conclude that "there was some force or attempt at penetrating the vagina. Usually it's assumed from intercourse or attempt at intercourse." Thus, we conclude that Dr. Hanna's statement that B.A. had "never had sex before" was admissible under section 115-13 as relevant evidence of the fact that a sexual assault occurred, without offending the legislature's intent in enacting section 115-7 to avoid undue harassment of B.A. Because there was no error in admitting the testimony, there can be no plain error and, thus, defendant's argument is procedurally defaulted.

Defendant next argues that the circuit court erred in administering a "blanket policy" of reserving ruling on his motion *in limine* to exclude prior convictions for impeachment purposes until after the defendant has testified, despite that fact that he did not ultimately testify in this case. At the time that defendant filed his appellate brief, the supreme court had issued its opinion in People v. Patrick, 233 Ill. 2d 62, 80 (2009), a consolidated case addressing our

holdings in People v. Patrick, No. 1-04-1895 (2006) (unpublished order under Supreme Court Rule 23) and People v. Phillips, 371 Ill. App. 3d 948 (2007). The supreme court held that a circuit court abuses its discretion if it administers a "blanket policy" of refusing to rule on a pending motion *in limine* and that the error is reversible where the defendant testified notwithstanding the court's failure to rule. Patrick, 233 Ill. 2d at 74-75. However, Patrick also held that if the defendant chose not to testify, then he had forfeited review of the circuit court's failure to rule on his motion. Patrick, 233 Ill. 2d at 77.

The supreme court had also granted petitions for leave to appeal in People v. Averett, 381 Ill. App. 3d 1001 (2008), appeal allowed, 231 Ill. 2d 671 (2009), and People v. Tucker, No. 1-06-2619 (2008) (unpublished order under Supreme Court Rule 23), appeal allowed, 231 Ill. 2d 684 (2009), at that time. The court then issued a subsequent *per curiam* order clarifying that it allowed those appeals to consider the specific question of whether a defendant could seek review based on the circuit court's "blanket policy" of refusing to rule on his motion *in limine*, even if he ultimately chose not to testify. People v. Averett, 237 Ill. 2d 1, 5 (2010).

It appears that defendant's argument on appeal was premised on the possibility that the supreme court would find a circuit court's "blanket policy" of refusing to rule on pending motions *in limine* to be so egregious that it would overcome the forfeiture that resulted from a defendant's failure to testify. However, after reviewing the issue as a matter of structural error, constitutional error, and plain error, Averett reaffirmed the holding in Patrick, further concluding that a circuit court's application of a "blanket policy" of refusing to rule on a pending motion *in*

*limine* is not reviewable on appeal where the defendant did not testify at trial. Averett, 237 Ill. 2d at 15-16.

Here, as in the case of defendant Phillips, the circuit court did not, in fact, apply a "blanket policy" of refusing to rule on a motion *in limine*. See Patrick, 233 Ill. 2d at 77. Rather, the court determined that it would be "premature" to rule on the motion before defendant testified and that it would have to "speculate" on defendant's testimony in order to determine whether the prejudicial effect of the prior convictions outweighed their probative value. See Patrick, 233 Ill. 2d at 77; see also Averett, 237 Ill. 2d at 15 ("In [defendant] Phillips' case [in Patrick, 233 Ill. 2d at 77], the trial judge did not use a blanket policy"). However, it is a distinction without a difference; defendant did not testify in this case. Thus, regardless of whether the court had a "blanket policy" to reserve ruling on motions *in limine*, we conclude that the issue is unreviewable under either Patrick or Averett. See Patrick, 233 Ill. 2d at 77 (a circuit court's discrete decision to defer ruling on a motion *in limine* is not preserved for review where the defendant does not testify at trial); Averett, 237 Ill. 2d at 7, 15 (although applying a "blanket policy" to defer ruling on a motion *in limine* is an abuse of discretion, it is ultimately unreviewable where the defendant does not testify at trial).

Additionally, contrary to defendant's contention, we cannot review this issue for plain error. Averett, 237 Ill. 2d at 12. As explained above, the plain error doctrine bypasses normal forfeiture principles and permits review of unpreserved errors in certain circumstances. Averett, 237 Ill. 2d at 11. However, defendant's decision not to testify "goes beyond normal forfeiture." Averett, 237 Ill. 2d at 12. By not testifying, a reviewing court is deprived of an adequate record

with which to evaluate the circuit court's decision on the admissibility of the prior convictions. Averett, 237 Ill. 2d at 12. The reviewing court would be forced to speculate on the substance of the defendant's testimony as well as the questions asked by the prosecution on cross-examination. Averett, 237 Ill. 2d at 12. Thus, we cannot apply the plain error doctrine to review an otherwise unpreserved error because there would be nothing to review.

Finally, defendant argues that the circuit court impermissibly considered B.A.'s age as an aggravating factor in sentencing where it was also an element of the crime for which he convicted, resulting in a "double enhancement." Although neither defendant nor the State addressed the issue, we must conclude that defendant has forfeited this argument as well.[2] The supreme court recently reiterated the "well settled" proposition that to preserve a claim of sentencing error, a defendant must object to the error at the sentencing hearing as well as raise the objection in a postsentencing motion. People v. Hillier, 237 Ill. 2d 539, 544 (2010), citing People v. Bannister, 232 Ill. 2d 52, 76 (2008); see also People v. Hall, 194 Ill. 2d 305, 352 (2000). Although defendant included the double enhancement argument in his postsentencing

---

[2] The State argued in passing that defendant waived the sentencing issue because defense counsel withdrew his argument in the postsentencing motion that defendant erroneously received an "enhanced penalty." See Gallagher v. Lenart, 226 Ill. 2d 208, 229 (2007) (waiver is the "intentional relinquishment of a known right"). However, defense counsel withdrew an argument based on an "extended-term sentence," which rightly did not apply because defendant's sentence was within the statutory range.

motion, he did not make a contemporaneous objection at the sentencing hearing. Thus, he has not preserved the issue for review.

Nevertheless, forfeited arguments related to sentencing issues may properly be reviewed for plain error. Hillier, 237 Ill. 2d at 545. As with trial errors, a defendant must show either that: "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." Hillier, 237 Ill. 2d at 545. Under either prong of the plain error rule, defendant bears the burden of persuasion. Hillier, 237 Ill. 2d at 545. We must "hold the defendant to his burden of demonstrating plain error" and if he fails to meet that burden, we must honor the procedural default. Hillier, 237 Ill. 2d at 545, 549.

The supreme court continually expresses that one of the most important functions of this court is to determine whether an issue has been properly preserved for review. People v. Smith, 228 Ill. 2d 95, 106 (2008) (the other paramount function is to determine whether we have jurisdiction to entertain the appeal). Thus, we must perform a proper forfeiture analysis to avoid the "regrettable" consequence that results when the supreme court "allows leave to appeal on an issue that it deems sufficiently important for [its] consideration and then must find the issue forfeited" as a result of an appellate court's failure to first determine whether the issue had been properly preserved for review. Hillier, 237 Ill. 2d at 549. Because defendant failed to recognize his forfeiture on this issue, he has not made any argument under either prong of the plain error doctrine. As such, he "obviously cannot meet his burden of persuasion." Hillier, 237 Ill. 2d at 545. Thus, he has forfeited plain error review. Hillier, 237 Ill. 2d at 545.

However, the supreme court has recently clarified that the forfeiture rule may be relaxed and an issue substantively reviewed where "the basis for the objection is the conduct of the trial judge." People v. McLaurin, 235 Ill. 2d 478, 485-88 (2009). Notwithstanding trial counsel's obligation to raise contemporaneous objections to allow for the immediate correction of trial errors, forfeiture may be relaxed in certain "extraordinary circumstances" under People v. Sprinkle, 27 Ill. 2d 398, 400-01 (1963). McLaurin, 235 Ill. 2d at 487-88. Specifically, forfeiture may only be relaxed where: (1) counsel's objection to the court's inappropriate comments to the jury risk alienating the jury by appearing disrespectful of the court's authority; (2) defense counsel's objection to the court's conduct outside the presence of the jury " 'would have fallen on deaf ears' "; or (3) the court relies on social commentary, rather than evidence, in sentencing a defendant to death. McLaurin, 235 Ill. 2d at 487-88; People v. Sprinkle, 27 Ill. 2d 398, 400-01 (1963). Such a limited application of the Sprinkle principle "underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations." McLaurin, 235 Ill. 2d at 488.

Arguably, only the second exception applies to defendant's double enhancement argument. McLaurin notes parenthetically that in People v. Saldivar, 113 Ill. 2d 256, 266 (1986), the supreme court held that counsel need not "interrupt the judge and point out that he was considering wrong factors in aggravation" in order to preserve a sentencing issue for review because such an objection would "fall on deaf ears." McLaurin, 235 Ill. 2d at 488. However, McLaurin also suggests that a defendant must specifically invoke the Sprinkle principle in order to take advantage of its leniency, which defendant did not do here. McLaurin, 235 Ill. 2d at 487

n.1 ("a defendant who successfully invokes <u>Sprinkle</u> is not limited in the same ways as a defendant relying solely on plain-error review"). Nevertheless, in the interest of completeness, we apply the <u>Sprinkle</u> principle here and conduct a substantive review of the merits of defendant's argument as though the error were properly preserved.

Defendant contends that the court improperly considered B.A.'s age, which is an element of the crime for which he was convicted, as an aggravating factor in imposing his 12-year sentence. It is well settled that generally, a factor that is implicit in the offense for which the defendant has been convicted cannot also be used as an aggravating factor in determining his sentence. <u>People v. Phelps</u>, 211 Ill. 2d 1, 11 (2004). The rationale for this prohibition against "double enhancement" is based upon the assumption that the legislature considered the factors inherent in the offense in designating the range of punishment. <u>Phelps</u>, 211 Ill. 2d at 12.

Defendant relies on <u>People v. White</u>, 114 Ill. 2d 61 (1986), in support of his argument. In <u>White</u>, the supreme court held that because a victim's age is an element of the crime of aggravated battery of a child, age cannot also be considered as an aggravating factor in sentencing a defendant for that offense. <u>White</u>, 114 Ill. 2d at 66; see also <u>Phelps</u>, 211 Ill. 2d at 12. Defendant argues that the same logic applies where, as here, defendant was convicted of predatory criminal sexual assault of a child under the age of 13. See 720 ILCS 5/12-14.1(a) (West 2004).

At the sentencing hearing, the court referred to B.A. as the "12-year-old" girl more than a dozen times, rarely referring to her by name. In many instances, the court used B.A.'s age to comment on the nature of the crime by underscoring defendant's abuse of a position of trust,

refuting defendant's contention that B.A. was "like family" to him, and explaining that sex with a 12-year-old girl could not be a "misunderstanding," as defendant maintained. Nevertheless, at one point, the court noted that B.A.'s age was one of many "aggravati[ng] circumstances" in this case. In light of that comment, and the frequency with which the court invoked her age, we must conclude that, under White, the circuit court improperly considered the victim's age as an aggravating factor in sentencing. See White, 114 Ill. 2d at 66.

However, as White went on to explain, reliance on an improper factor in aggravation does not require that we remand for resentencing. White, 114 Ill. 2d at 66-67. Improper double enhancement occurs only if consideration of that factor results in a " 'harsher sentence than might otherwise have been imposed.' " Phelps, 211 Ill. 2d at 11-12, quoting People v. Gonzalez, 151 Ill. 2d 79, 83-84 (1992). Thus, if it appears from the record that the weight placed on the improperly-considered factor was so insignificant that it did not result in a greater sentence, then we need not remand for resentencing. White, 114 Ill. 2d at 67, citing People v. Bourke, 96 Ill. 2d 327, 332 (1983).

Predatory criminal sexual assault of a child is a Class X felony. 720 ILCS 5/12-14.1(b)(1) (West 2004). At the time of sentencing in this case, the offense was punishable by 6 to 30 years' imprisonment, with the possibility that a court could impose an extended term sentence of 30 to 60 years's imprisonment. (720 ILCS 5/12-14.1(b)(1) (West 2004)); 730 ILCS 5/5-5-3.2(c) (West 2004) (the court may impose an extended term sentence "upon any offender who was convicted of *** predatory criminal sexual assault of a child *** where the victim was under 18 years of age at the time of the commission of the offense); 730 ILCS 5/5-8-2(a)(2)

(West 2004) ("for a Class X felony, [an extended-]term [sentence] shall be not less than 30 years and not more than 60 years).

Defendant, who was 18 years old at the time of the assault on B.A., had been convicted of three felony offenses in as many years. In fact, defendant was serving a three-year probation sentence at the time that he committed the instant offense. Both of these circumstances by themselves constitute statutory aggravating factors. 730 ILCS 5/5-5-3.2(a)(3), (a)(12) (West 2004). Moreover, the court noted that defendant previously served 194 days in an adult prison on his first conviction, which "apparently didn't phase [him] in the slightest." Additionally, the court found that defendant displayed no remorse for his actions, calling him "insensitive" for suggesting that the sexual assault of B.A. was a "misunderstanding." The court also noted that defendant, as the father of B.A.'s nephew, was in a position of trust, and that he took advantage of that position with B.A. in her own home. Defense counsel did not argue that any statutory mitigating factors applied here, and the court cited none. The court recognized defendant's difficult upbringing, but found that that did not "condone" the crime or minimize the effect that the assault would have on B.A. in the future.

As in White, the record in this case disclosed the presence of two statutory aggravating factors and the absence of any mitigating factors. See White, 114 Ill. 2d at 67-68. Additionally, the court here acknowledged the defendant's lack of remorse. As a result of these findings, the court sentenced defendant to 12 years' imprisonment, rather than the 30 or 60 years for which he was eligible. Thus, we find that the weight placed on the improperly considered factor of the victim's age did not result in a "harsher sentence than might otherwise have been imposed."

Phelps, 211 Ill. 2d at 11-12. Therefore, as in White, we decline to remand the matter for resentencing. See White, 114 Ill. 2d at 67-68.

For the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

CUNNINGHAM and KARNEZIS, JJ., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

CORDELLO FREEMAN,

Defendant-Appellant.

## No. 1-08-1536

**Appellate Court of Illinois
First District, Second Division**

**Filed: September 28, 2010**

## PRESIDING JUSTICE THEIS delivered the opinion of the court.

**Cunningham and Karnezis, JJ., concur.**

**Appeal from the Circuit Court of Cook County
Honorable Stanley J. Sacks, Judge Presiding**

| For PLAINTIFF-APPELLEE | Anita Alvarez, Cook County State's Attorney<br>Alan J. Spellberg, Assistant State's Attorney<br>Mary P. Needham, Assistant State's Attorney<br>Mikah Soliunas, Assistant State's Attorney<br>Richard J. Daley Center, Room 309<br>Chicago, Illinois 60602 |
|---|---|
| For DEFENDANT-APPELLANT: | Michael J. Pelletier, State Appellate Defender<br>Brian McNeil, Assistant Appellate Defender<br>Office of the State Appellate Defender<br>203 N. LaSalle Street, 24th Floor<br>Chicago, Illinois 60601 |