NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250041-U

NO. 4-25-0041

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| CONNOR B. ANDERSON, | ) | No. 22CF1288 |
|     Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) defendant's sixth amendment (U.S. Const., amend. VI) right to autonomy was not violated when trial counsel partially conceded his guilt at trial and (2) defendant forfeited his sentencing error claim.

¶ 2    In October 2024, defendant, Connor B. Anderson, was convicted by a jury of felony domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022)) and two counts of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (2) (West 2022)). For the domestic battery conviction, he was sentenced to 30 months' probation and 180 days in jail, with 120 of those days stayed. On appeal, he argues (1) his trial counsel violated his sixth amendment (U.S. Const., amend. VI) right to autonomy by conceding his guilt regarding the DUI offenses during both opening and closing arguments and (2) his sentence was excessive. We affirm.

¶ 3                        I. BACKGROUND

¶ 4    The matter proceeded to a jury trial in October 2024, where the State elected to proceed on (1) one count of felony domestic battery, alleging defendant knowingly caused bodily harm to Bonnie Wolf by pushing her and ripping out her hair after he had previously been convicted of domestic battery in McLean County case No. 21-CM-36, and (2) two counts of DUI.

¶ 5    Prior to trial, the State indicated it had tendered a final offer to defendant to plead guilty to a misdemeanor DUI and misdemeanor domestic battery and, in exchange, receive a sentence of 24 months' probation and be required to complete DUI and domestic battery treatment. Defendant confirmed he received the State's offer and had rejected it.

¶ 6    During opening statements, defendant's counsel stated to the jury, "[S]everal hours after having an argument with [Wolf], [defendant] comes home. He's drunk, he's over .08 [blood alcohol content]. He's committed a DUI. He's charged with it. They're going to prove that, because it happened." Counsel then argued the evidence would show Wolf attacked defendant, and any injuries she incurred she caused to herself.

¶ 7    At trial, Wolf testified, on December 24, 2022, defendant, after waking up, drank "two beers" prior to leaving their home. When he returned, Wolf stated he began striking her and pulling her hair out while she was in the bedroom with their child. Wolf stated defendant stopped briefly to put their child outside of the room, only to return to the room and continue hitting her. Wolf said she convinced defendant to leave the room and check on their child. When defendant left the room, Wolf stated she left the bedroom through a window and walked back into the home through the front door after grabbing a drywall saw as a weapon to protect herself. Wolf stated she secured the child and gave defendant his phone, after which he left. On cross-examination, Wolf denied ever swinging the drywall saw at defendant. Wolf admitted she had previously been

- 2 -

convicted of domestic battery herself.

¶ 8        Police officer Jose Zavala testified he arrived at Wolf's home the evening of the incident. While waiting outside Wolf's home, Zavala stated he observed defendant's vehicle arrive. Zavala said, when he initiated a traffic stop, defendant parked his vehicle and fled the scene on foot. Zavala stated defendant emitted a strong odor of an alcoholic beverage and his speech was slurred. Zavala also observed open alcohol containers in defendant's vehicle. Zavala stated defendant was transported to the Bloomington Police Department, where field sobriety testing was conducted. On cross-examination, Zavala noted defendant had told him Wolf had struck him with the drywall saw and that his left arm hurt. Zavala did not observe any injuries to defendant's left arm but stated defendant's right sleeve had been "cut or ripped." Further, Zavala conceded, when he interviewed defendant after the incident, he challenged defendant's version of events for inconsistencies; however, Zavala also conceded he did not challenge Wolf's version of events when he interviewed her.

¶ 9        Police officer Hunter Clark testified he performed the breath alcohol analysis on defendant at the police station. Clark stated defendant's breath sample yielded a 0.122 alcohol level.

¶ 10        The State rested.

¶ 11        Defendant presented no evidence and also rested.

¶ 12        During closing arguments, counsel for defendant again conceded defendant's guilt pertaining to the DUI charges, stating, "[Defendant] was quite drunk. DUI, guilty." Counsel later stated, "[W]hile [defendant] is guilty of DUI on December 24, 2022, he's simply not guilty of domestic battery." Counsel maintained Wolf was the primary aggressor and that she fabricated her injuries.

¶ 13        The jury returned guilty verdicts on all counts.

¶ 14        The matter proceeded to a sentencing hearing in December 2024. A presentence investigation report (PSI) was admitted without corrections. The PSI showed defendant had two prior convictions for domestic battery in 2015 and 2021 and a prior DUI in 2014, for which he received court supervision. Regarding the 2021 domestic battery conviction, the PSI showed defendant received 18 months' conditional discharge on June 28, 2021, which meant he was still serving his conditional discharge at the time he committed the instant offenses.

¶ 15        Defendant provided a statement in allocution where he admitted to the DUI. He stated alcohol treatment would be good for him, given he owned a business and had children.

¶ 16        The trial court stated it had considered the PSI, evidence from the parties, defendant's history, character, and attitude, the statutory factors in aggravation and mitigation, defendant's statement in allocution, and the arguments from the parties. The court noted the instant offenses occurred when defendant was "under a continuing order in another case" and described it as a "big negative." The court also noted a prison sentence would detrimentally impact defendant's business and rehabilitative potential. Regarding the felony domestic battery conviction, the court sentenced defendant to 30 months' probation and 180 days in jail. The jail sentence included 60 days to be served *instanter*, with day-for-day credit and 120 days stayed. Defendant was also ordered to complete a substance abuse evaluation and any recommended treatment and undergo domestic violence treatment. The court merged the DUI convictions. The court sentenced defendant to 24 months' probation and ordered a secure continuous remote alcohol monitor.

¶ 17        No postsentencing motion was filed.

¶ 18        This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20         On appeal, defendant argues (1) his trial counsel violated his sixth amendment right to autonomy by conceding his guilt regarding the DUI offenses during both opening and closing arguments and (2) his sentence was excessive. We address each claim in turn.

¶ 21                            A. Sixth Amendment Claim

¶ 22         Defendant argues his trial counsel undermined his plea of not guilty by conceding his guilt regarding the DUI charges to the jury during his opening and closing arguments. He cites *McCoy v. Louisiana*, 584 U.S. 414 (2018), in support.

¶ 23         In *McCoy*, the defendant had been charged with first degree murder in the deaths of three individuals. *Id.* at 418. The defendant pleaded not guilty; however, his trial counsel sought to concede his guilt to avoid the death penalty. *Id.* at 418-19. The defendant sought to terminate his counsel's representation, but the trial court denied his efforts. *Id.* at 419. At trial, the defendant's counsel conceded his guilt regarding the murders to the jury. *Id.* at 419-20. The defendant testified on his own behalf, maintaining his innocence. *Id.* at 420. On appeal, the United States Supreme Court held, "[A] defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* at 417.

¶ 24         Analogizing *McCoy*, defendant concedes he did not voice any objection to his counsel's trial strategy to the trial court. However, he contends he pleaded not guilty and rejected the State's plea offer just prior to the trial commencing with the intent of seeking full exoneration. He also cites *People v. Hattery*, 109 Ill. 2d 449, 463 (1985), for the proposition that where counsel concedes a defendant's guilt, the defendant's knowing consent to such a trial strategy must appear in the trial record.

¶ 25    The State argues, because defendant did not voice any objection to his trial counsel's strategy to concede his guilt regarding the DUI offenses, the record is inadequate to resolve his ineffective assistance of counsel claim.

¶ 26    In *McCoy*, the Supreme Court stated a defendant decides "whether to plead guilty, waive the right to a jury trial, testify [on his] own behalf, and forgo an appeal." *McCoy*, 584 U.S. at 422. A "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless-error review." *Id.* at 427. "The United States Supreme Court has explained that '[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' " *People v. Jackson*, 2022 IL 127256, ¶ 29 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017)).

> "The structural errors identified by the Supreme Court include [1] a complete denial of counsel, [2] denial of self-representation at trial, [3] trial before a biased judge, [4] denial of a public trial, [5] racial discrimination in the selection of a grand jury, and [6] a defective reasonable doubt instruction." *Id.*

"The commonality of these errors is that they affect the framework within which the trial proceeds, rather than mere errors in the trial process itself." *Id.* The *McCoy* court concluded, where a "[defendant's] autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence." *McCoy*, 584 U.S. at 426.

¶ 27    We find *McCoy* distinguishable from the instant matter. First, unlike in *McCoy*, defendant did not voice any opposition to trial counsel's strategy of conceding guilt to the DUI offenses. See *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (stating where a "defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the

defendant's explicit consent"). Second, counsel for the defendant in *McCoy* conceded the entirety of the guilt phase of the defendant's trial in an effort to spare the defendant during the penalty phase. Here, defendant was charged with felony domestic battery and misdemeanor DUI, and counsel only conceded the lesser misdemeanor DUI offense. Where "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, *** there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." (Emphasis added.) *United States v. Cronic*, 466 U.S. 648, 659 (1984). Here, counsel did not entirely fail to challenge the State's case. Thus, defendant received representation of counsel and adversarial testing of the State's domestic battery charge. Given the differences between the case at bar and *McCoy*, we find none of the aforementioned structural errors applicable here.

¶ 28    Our caselaw, however, has dealt with the issue of trial counsel partially conceding a defendant's guilt to some, but not all, offenses charged as a matter of trial strategy. Many, but not all, of these cases predate *McCoy* and apply the ineffective-assistance-of-counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): *People v. Monroe*, 2013 IL App (4th) 120274-U; *People v. Stokes*, 2015 IL App (4th) 130710-U; and *People v. Edwards*, 2020 IL App (1st) 180501-U. While defendant frames this issue as a matter of sixth amendment autonomy controlled by *McCoy*, the fact is this case is not at all like *McCoy* because trial counsel *did* challenge the State's evidence in part; that is, he only partially conceded defendant's guilt. Therefore, we find the *McCoy* analysis is not binding in this case. See *Nixon*, 543 U.S. at 192 (noting where a defendant is unresponsive to counsel's strategic decision to concede guilt, then "counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, [and] that is the end of the matter").

¶ 29    To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy

the two-pronged test from *Strickland*. Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Hale*, 2013 IL 113140, ¶ 18 (quoting *Strickland*, 466 U.S. at 694).

¶ 30    In *Hattery*, our supreme court held prejudice will be presumed "[w]here 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' " *Hattery*, 109 Ill. 2d at 461 (quoting *Cronic*, 466 U.S. at 659). However, in *People v. Johnson*, 128 Ill. 2d 253, 269 (1989), our supreme clarified there is no "*per se* ineffectiveness whenever the defense attorney concedes his client's guilt to offenses in which there is overwhelming evidence of that guilt but fails to show on the record consent by [the] defendant. This would be especially true when counsel presents a strong defense to the other charges."

¶ 31    We find our supreme court's guidance from *Johnson* is applicable to the instant case. On appeal, defendant does not argue his trial counsel rendered ineffective assistance. Our review of the record shows counsel presented a vigorous defense to defendant's domestic battery charges. Counsel challenged Wolf's and Zavala's testimonies. It is clear counsel's strategy to concede defendant's guilt regarding the DUI offenses was predicated on both the overwhelming evidence he had committed the offenses and also to build credibility into defendant's contention that Wolf was the aggressor during their altercation. Regarding the overwhelming evidence, Zavala observed defendant driving and, after he fled, found open alcohol containers in the vehicle. Defendant subsequently tested above the legal limit. Prejudice would require defendant to "show that there is a 'reasonable probability that, absent the errors, the factfinder would have

had a reasonable doubt respecting guilt.' " *Id.* at 271 (quoting *Strickland*, 466 U.S. at 695). Even if counsel had not conceded guilt, there is no reason to believe, from the evidence at trial, the jury would have had reasonable doubt as to defendant's guilt regarding the DUI offense. Because defendant cannot show prejudice, he cannot show his trial counsel rendered ineffective assistance.

¶ 32                              B. Excessive Sentence Claim

¶ 33        Defendant next argues his sentence was excessive where the trial court focused primarily on aggravating factors. He notes the court only briefly mentioned the mitigating evidence that he was a hardworking business owner who prioritized his children before focusing heavily on the aggravating factors and negative aspects of defendant's conduct.

¶ 34        The State responds by arguing defendant was eligible for imprisonment in the Illinois Department of Corrections, but because of the mitigating evidence properly considered by the trial court, he received only probation and a jail sentence.

¶ 35        We begin by noting, after the trial court imposed sentence, no postsentencing motion was filed. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Where a defendant fails to preserve a claim of sentencing error, the issue is procedurally forfeited. *Id.* However, neither party on appeal has raised the issue of forfeiture. Our supreme court has clearly instructed appellate courts of their "two most important tasks *** when beginning the review of a case": (1) ascertain jurisdiction is proper and (2) "determine which issue or issues, if any, have been forfeited." *People v. Smith*, 228 Ill. 2d 95, 106 (2008).

¶ 36        Because defendant failed to contemporaneously object at sentencing and file a

- 9 -

postsentencing motion challenge his sentence as excessive, he has clearly forfeited the issue. See *People v. Freeman*, 404 Ill. App. 3d 978, 993-97 (2010) (finding the defendant had forfeited a sentencing claim despite neither party raising the issue of forfeiture). Where a defendant forfeits a sentencing claim, "we may review this claim of error only if [the] defendant has established plain error." *Hillier*, 237 Ill. 2d at 545. To establish plain error, "a defendant must first show that a clear or obvious error occurred." *Id.* "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant of a fair sentencing hearing." *Id.*

¶ 37   On appeal, defendant does not argue plain error. Because he has failed to first show a clear or obvious error occurred and argue either prong of the plain error doctrine, he "cannot meet his burden of persuasion" and has forfeited plain error review. *Id.* at 544-46. Accordingly, we honor defendant's forfeiture of this issue. *Id.* at 545 ("If the defendant fails to meet his burden, then procedural default will be honored.").

¶ 38         III. CONCLUSION

¶ 39   For the reasons stated, we affirm the trial court's judgment.

¶ 40   Affirmed.